John BOSWORTH, Plaintiff,

v.

Melvin EHRENREICH, John Scalice, and Hi–Pro Marketing, Inc., Defendants.

Civ. A. No. 93–2246 (WGB).

United States District Court,
D. New Jersey.

June 8, 1993.

As Amended June 9, 1993.

Blank, Rome, Comiskey & McCauley by Stephen M. Orlofsky, Anne C. Singer, Cherry Hill, NJ, for plaintiff, John Bosworth.

Wilentz, Goldman & Spitzer by Robert Mahoney, Woodbridge, NJ, for the defendant, Melvin Ehrenreich.

McManimon & Scotland by Edward F. Clark, Newark, NJ, for the defendants, John Scalice and Hi–Pro Marketing, Inc.

## OPINION

BASSLER, District Judge:

The plaintiff, John Bosworth, applies for a preliminary injunction under Fed.R.Civ.P. 65. One of the defendants, John Scalice, moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and to stay this action pending the arbitration. For the following reasons, the Court grants in part and denies in part Bosworth's application for injunctive relief. Furthermore, the Court transfers venue to the Southern District of New York and dismisses as moot Scalice's motions to compel arbitration and stay the action.

## I. BACKGROUND

This case involves a closely held corporation with three co-owners who recently have found it difficult to agree on how to run their business. Bosworth, Scalice and the defendant, Melvin Ehrenreich, each hold a one-third ownership of Hi–Pro Marketing, Inc., an Illinois corporation which manufactures "sculptured" sports cards. Under a Shareholders Agreement signed on May 1, 1991, Scalice was to serve as President, Bosworth as Vice–President and Ehrenreich as Secretary–Treasurer. For the past four months, however, these co-owners have engaged in various disputes. The alliances among them have continually shifted, in a corporate game of "musical directors' chairs."

The problems apparently began seriously to affect Hi–Pro's corporate structure on February 10, 1993, when Bosworth and Ehrenreich asked Scalice to resign as an officer and director of the corporation. All three men that day signed a hand-written document entitled "Terms of Buyout," under which Scalice would purportedly "sell back all stock in Hi–Pro, Inc." (See Affidavit of Edward F. Clark, Esq., Exhibit B). Scalice, however, denies that he ever agreed to resign or sell back his shares, though he acknowledges that he did not participate directly in the daily activities of the corporation for nearly four months after the February 10, 1993 meeting. (Deposition of John Scalice, at 41).

Bosworth and Ehrenreich found it hard to agree on how to manage the corporation in Scalice's absence. They met to discuss their differences on May 11, 1993, but were unable to reach a mutually acceptable solution. (See Declaration of John Bosworth, at 4–8). Bosworth asserts that "Ehrenreich's attitude toward me has been generally to keep me uninformed or misinformed." (Id. at 5).

Scalice, meanwhile, on April 21, 1993 filed a lawsuit against Ehrenreich, Hi–Pro and Bosworth in the Superior Court of New Jersey, Chancery Division, Bergen County, claiming among other things that he never resigned from Hi–Pro, never accepted a buyout, and was entitled to have a receiver appointed for the corporation. The defendants removed this action to this Court under Civil Action No. 93–1855.[1]

Despite his pursuit of legal remedies against Bosworth, Scalice nevertheless acknowledges that he was also attempting to work out an agreement with Bosworth, to the exclusion of Ehrenreich. Scalice and Bosworth would "[u]ltimately buy [Ehrenreich] out, ... or Mr. Ehrenreich would have been fired as an employee, kept on as a director and stockholder and just allowed to sit there." (Deposition of John Scalice, at 50). Scalice states that he and Bosworth called a director's meeting for May 11, 1993, later rescheduled for May 21, 1993, in which they planned, in Scalice's words, "to get rid of Mel." (Id., at 56–57).

By May 21, 1993, the corporate alliances among the three co-owners had shifted again. Scalice had now worked out his disagreements with Ehrenreich. Bosworth was now

---

1. In that related action, Scalice applied for an order to show cause, seeking the appointment of a receiver for Hi–Pro. He later withdrew that application. The Court is under the impression that Scalice intends to voluntarily dismiss his entire complaint in Scalice v. Ehrenreich et al., Civil Action No. 93–1855. As of this date, however, the action is still pending.

the odd man out. Scalice and Ehrenreich voted that day to terminate Bosworth as an officer of Hi–Pro. This vote represented an abrupt change in position for Ehrenreich. In fact, as recently as May 13, 1993, Ehrenreich had informed Bosworth that he objected to notice of the directors meeting being given to Scalice, "who is no longer a director of this corporation, and is not entitled to attend." (*Id.*, Exhibit I).

Ehrenreich, in explaining his shift in position, states that he wanted Bosworth terminated as an officer because Bosworth had taken certain actions on May 21, 1993 that "put the company in danger of financial ruin." (Declaration of Melvin Ehrenreich, May 24, 1993, at 2). In particular, he alleges that Bosworth attempted to prevent the meeting from going forward by refusing to put through a call from Hi–Pro's Fort Lee, N.J. offices to Ehrenreich in Illinois and by hiring security guards to bar Scalice from entering the Fort Lee offices. (*Id.* at 3).

Bosworth gives a quite different version of these events. He states that Scalice had arrived at the Fort Lee offices on the afternoon of May 21 with two attorneys and two private investigators. (Declaration of John Bosworth, at 3). Also present were attorneys representing, respectively, Ehrenreich and Bosworth. As Bosworth describes it:

5. [Bosworth's attorney, A. Fred] Ruttenberg told the others present that we considered the meeting invalid because Scalice had resigned as director. This position is consistent with the position which has been taken by Hi–Pro, Ehrenreich and me in the Scalice litigation [Civil Action No. 93–1855]. [Scalice's attorney William] Merker stated, however, that he was going ahead with the meeting and intended to telephone Ehrenreich. I refused to attend a so-called "directors'" meeting called by someone who was no longer a director of Hi–Pro and refused to allow Scalice to use the corporate offices for that purpose. I also refused to allow Mr. Merker to use Hi–Pro's telephones to call Ehrenreich.

6. Messrs. Merker, [Scalice's attorney Donald] Boles, [Ehrenreich's attorney Joseph] Fleischman and Scalice then departed and soon sent me a notice via telecopier from another location, announcing that the meeting was convening in Conference Room A at E.C.I., Inc., in Edgewater, N.J. My attorney and I did not attend that meeting.

(*Id.* at 3–4).

In any event, the parties agree that Scalice then contacted Ehrenreich by phone and the two men conducted a "director's meeting." At that meeting, the two men voted to terminate Bosworth's employment with Hi–Pro, to elect Scalice as Chief Executive Officer and Steven Merker, the brother of William Merker, as Chief Financial Officer and Vice–President. (*Id.* at 4).

On that same day, Ehrenreich alleges, Bosworth sent a fax to Midwest Bank, "withdrawing all funds in the operating account and applying these funds to pay down a line of credit which had expired on April 2, 1993." (*Id.*) Bosworth allegedly knew that three checks had been drawn on the funds in the operating account, including a $300,000 check payable to the National Football League. (*Id.* at 2). Ehrenreich states that, to prevent the checks from being dishonored, he worked out an emergency agreement with the bank and an unnamed outside investor, "who invested $381,000 of his personal funds." (*Id.* at 3).

Bosworth filed suit in this Court on May 24, 1993, seeking an order to show cause with preliminary restraints. The Court that day granted the application for preliminary restraints, setting a June 3, 1993 return date for a hearing on Bosworth's application for a preliminary injunction. The preliminary restraints enjoined Ehrenreich, Scalice and Hi–Pro from:

(a) terminating the employment of Bosworth with Hi–Pro;

(b) altering Bosworth's compensation;

(c) engaging in any transaction regarding the issuance, sale, transfer, pledge or other commitment of stock of Hi–Pro, without Bosworth's approval; and

(d) selling or disposing of any of Hi–Pro's assets other than in the ordinary course of business.

(Order to Show Cause with Preliminary Restraints, May 24, 1993, at 2). The Court also

ordered the defendants to make available Hi–Pro's books and records and provided for the depositions of Scalice and Ehrenreich no later than June 2, 1993.

After a discovery dispute arose among the parties, United States Magistrate Judge Dennis M. Cavanaugh on May 28, 1993 ordered that Ehrenreich make himself available for a deposition in Illinois on Memorial Day, May 31, 1993. Ehrenreich, however, did not comply with Judge Cavanaugh's order and has not yet been deposed. The Court has warned Ehrenreich and the other parties that it will not condone further disregard of such an order.

Bosworth now applies for immediate injunctive relief. He alleges that the actions of the defendants at the May 21, 1993 meeting, at which he was purportedly terminated as a Hi–Pro employee, were "oppressive" under Illinois law. He seeks either a provisional director, appointed by the Court to resolve the deadlock on the board of directors, or, alternatively, to have his stock purchased at fair value by the defendants.

Ehrenreich has filed a signed declaration in opposition to Bosworth's request for injunctive relief. Scalice has filed a brief and an affidavit of Edward F. Clark, Esq., in opposition. Scalice has also filed a motion to stay this action pending arbitration. He asserts that the disputes raised in Bosworth's verified complaint must be arbitrated in accordance with Article 13 of the Shareholders' Agreement.

The parties also disagree on Scalice's status with the corporation. Bosworth argues that Scalice should not longer act as a director, as he resigned February 10, 1993. According to both Scalice and Ehrenreich, however, Scalice did not resign and continues to hold a director's position.

## II. DISCUSSION

For the reasons discussed below, the Court agrees with Scalice that Bosworth's complaint is arbitrable and concerns issues which must be resolved by a New York arbitrator. This Court, however, does not have the power to compel arbitration outside the District of New Jersey. Under the Federal Arbitra-

tion Act, 9 U.S.C. § 1 et seq., any petition to compel arbitration or confirm an arbitration award must be filed in the Southern District of New York. The Court, therefore, transfers venue in this action under 28 U.S.C. § 1406(a) to the Southern District of New York.

The Court, however, is extremely concerned about irreparable harm to the corporation Hi–Pro, and indirectly, to the three co-owners, Bosworth, Scalice and Ehrenreich, which will result unless the present state of corporate chaos is brought under some semblance of control. Therefore, the Court will appoint a provisional director, with two votes, to help stabilize the corporate operations pending arbitration.

The Court, furthermore:

(1) permits Scalice to serve as a director and to serve as President;

(2) permits Bosworth and Ehrenreich to continue as voting members of the board of directors;

(3) orders that the board of directors make only routine business decisions pending the arbitration, unless the corporation's financial stability requires emergent action; and

(4) restrains the parties from implementing the resolutions and/or agreements of Scalice and Ehrenreich, as reflected in the minutes of the May 21, 1993 "directors' meeting."

### A. Federal Arbitration Act

Congress has enacted the Federal Arbitration Act, 9 U.S.C. § 1 et seq., "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* — U.S. —, —, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Section 2 of the Act provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The parties do not dispute that the Shareholders Agreement for Hi–Pro Marketing, a closed corporation which distributes products nationally, is a transaction involving interstate commerce. Therefore, the Court must look to the Federal Arbitration Act to determine the effect of the arbitration clause in Article 13. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Act applies even though jurisdiction in this case is based on diversity of citizenship. *See Painewebber, Inc. v. Hartmann,* 921 F.2d 507, 510 (3d Cir.1990) (citations omitted).

Having reviewed the verified complaint, the Court concludes that all three counts are arbitrable under the broad language in Article 13 of the Shareholders Agreement. Article 13 provides, in part:

> Any controversy arising out of or relating to this Agreement or any modification, extension or termination thereof, including any claim for damages and/or recission, shall be resolved by arbitration in New York, New York in accordance with the Rules then obtaining of the American Arbitration Association. The parties consent to the jurisdiction of the Court of the State of New York, County of New York, and of the Federal District Court of the Southern District of New York, for all purposes in connection with such arbitration ...

(Exhibit A of Affidavit of Edward F. Clark, Esq.)

Section 4 of the Act allows a litigant to petition a federal district court to enforce an arbitration agreement. *See* 9 U.S.C. § 4. A district court, before compelling an unwilling party to arbitrate, "must engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Painewebber,* 921 F.2d at 511. If the court finds that the dispute falls within the scope of the arbitration agreement, it may not consider the merits, but must refer the matter to arbitration. *Id.*

The Court operates under "a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.,* (quoting *AT & T Technologies v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)) (emphasis in original). The parties here dispute whether it may be said with "positive assurance" that the dispute falls outside the substantive scope of the agreement.

The Court finds that the Article 13 arbitration clause is broadly worded. It refers to "[a]ny controversy arising out of or relating to this Agreement or any modification, extension or termination thereof." *Compare Goodwin v. Elkins & Co.,* 730 F.2d 99, 109–110 (3d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984) (clause which stated "[a]ny controversy arising hereunder" considered broad in sweep). Furthermore, the plaintiff, John Bosworth, bases his complaint in significant part on the defendants' Ehrenreich and Scalice on May 21, 1993 attempting to *terminate* his relationship to the corporation and therefore *modify* the agreement, of which Bosworth is a signatory.

Bosworth has acknowledged at page 15 of his brief that Count III, which asks the Court to restrain the defendants from terminating his employment, is arbitrable. He argues, however, that the provisions of the Shareholders Agreement are "not relevant" to Counts I and II. Therefore, he asserts that the Court should stay arbitration on Count III, pending a judicial resolution of Counts I and II. *See Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 644 (7th Cir. 1981). The Court disagrees.

In Count I of the complaint, Bosworth seeks a Court-ordered purchase of his stock by the defendants, alleging that the purported termination of Bosworth on May 21, 1993 was illegal and oppressive. In Count Two, he seeks the appointment of a provisional director, alleging that he and Ehrenreich are hopelessly deadlocked in trying to operate the corporation.

Applying the generous standard of *AT & T Technologies,* the Court cannot see how Bosworth can provide "positive assurance" that there is no reasonable interpretation of the Article 13 that would include the disputes described in Counts I and II. This article sweeps very widely. The Court finds the language "any controversy arising out of or relating to this agreement" in Article 13 can be reasonably interpreted to cover both Bosworth's termination and the purported deadlock on the board.

Having concluded that all three counts of Bosworth's complaint fall within the Article 13 arbitration clause, the Court must now consider Scalice's motion to stay the action pending arbitration. As a threshold matter, the Court concludes that Scalice is also moving to compel arbitration. Although his motion does not specifically request this relief, his brief at pages 13–14 strongly imply that he seeks this relief.

The Court is faced with a dilemma: Article 13 provides for arbitration in New York City. However section 4 of the Arbitration Act provides that arbitration must take place "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Therefore, only the federal district court for the Southern District of New York could compel arbitration in that district.

In *Econo–Car International v. Antilles Car Rentals,* 499 F.2d 1391, 1394 (3d Cir. 1974), the Third Circuit held that the district court in the Virgin Islands could not compel arbitration in New York, despite the arbitration clause. As a general rule, the place where the petition is filed determines the locale for arbitration. *See Alpert v. Alphagraphics Franchising,* 731 F.Supp. 685, 689 (D.N.J.1990) (citation omitted). The federal courts, however, have generally attempted to carry out the terms of the parties' freely negotiated arbitration agreements. *Id.*

■ This Court sits in New Jersey and cannot compel arbitration in New York. Article 13, however, provides for arbitration in New York, within the Southern District of New York. Furthermore, the Third Circuit in *Econo–Car* did not reach the issue of whether the Virgin Islands district court

could have compelled arbitration in its own district, when the arbitration clause provided otherwise. Other courts have expressed concern that a district court by ignoring an arbitration clause and compelling arbitration in its own district would encourage forum shopping by plaintiffs dissatisfied with the forum selection clause. *See Alpert,* 731 F.Supp. at 689 (citing cases).

Therefore, the Court may not compel arbitration in New York and will not, even if it could, compel arbitration in New Jersey. The Court, therefore, will transfer venue to the Southern District of New York under 28 U.S.C. § 1406(a), to further the intent of the parties as expressed in Article 13 of the Shareholders Agreement.

■ Lastly, the Court must consider whether, pending the commencement of arbitration proceedings in New York, equity requires that certain preliminary restraints be imposed. Even in a dispute which is considered arbitrable under the Federal Arbitration Act, a district court has the power to order preliminary relief, in order that the arbitration itself is not a "hollow formality." *See Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806, 811 (3d Cir.1989); *Roso–Lino Beverage Distributors v. Coca–Cola Bottling Co.,* 749 F.2d 124, 125 (2d Cir.1984) (per curiam).

As Bosworth notes at page 16 of his brief, the Article 13 arbitration clause does not bar the Court from granting preliminary injunctive relief. The article states that "[a]ny provisional remedy which, but for this Agreement to arbitrate disputes, would be available at law, shall be available to the parties hereto pending arbitration."

The Third Circuit has stated that a district court, in determining whether to impose preliminary restraints pending arbitration, should use the analysis ordinarily employed for applications for preliminary injunctions. *Ortho,* 882 F.2d at 812–13. For the following reasons, the Court concludes that such relief is appropriate here.

### B. Preliminary Injunction Analysis

■ The Third Circuit considers injunctive relief "an extraordinary remedy." *Instant*

*Air Freight v. C.F. Air Freight,* 882 F.2d 797, 800 (3d Cir.1989). The moving party must demonstrate (1) a likelihood of success on the merits and (2) the probability of irreparable harm if relief is not granted. *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982). If relevant, the Court may also consider (3) the possibility of harm to other interested persons and (4) the public interest. *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir. 1982) (in banc).

## 1. Likelihood of Success on the Merits

Bosworth must establish a "reasonable probability of eventual success in the litigation." *Kershner,* 670 F.2d at 443. The Third Circuit has said:

> [i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits.

*Oburn v. Shapp,* 521 F.2d 142, 148 (3d Cir. 1975).

As a threshold matter, the Court concludes that the Illinois corporate statutes apply here. First, Hi–Pro was incorporated in Illinois. Second, Article 14 of the Shareholders Agreement provides that the agreement "shall be governed by and construed and enforced in accordance with the internal law of the State of Illinois applicable to agreements made and to be performed entirely in Illinois, *without regard to any principles of conflicts of law.*" (Shareholders Agreement at 18) (emphasis added).

Under Section 12.55 of the Illinois Business Corporation Act, a trial court may, in lieu of dismissing the action or ordering dissolution of the corporation, appoint a provisional director. 805 Ill.Ann.Stat. ch. 5, para. 12.55(a)(1) (Smith–Hurd 1993). The trial court has the discretion to appoint a provisional director "if it appears that such action by the court will remedy the grounds alleged by the complaining shareholder to support the jurisdiction of the court under Section 12.50." Ill.Ann.Stat. ch. 5, para. 12.55(b).

Section 12.50 sets for the grounds for judicial dissolution of a corporation. Subsection (b) of that section provides that, to establish grounds for dissolution, a shareholder must show either:

(1) The directors are deadlocked, whether because of even division in the number thereof or because of greater than majority voting requirements in the articles of incorporation or the by-laws, in the management of the corporate affairs; the shareholders are unable to break the deadlock; and either irreparable injury to the corporation is thereby caused or threatened or the business of the corporation can no longer be conducted to the general advantage of the shareholders; or

(2) The directors or those in control of the corporation have acted, or will act in a manner that is illegal, oppressive or fraudulent; or

(3) The corporate assets are being misapplied or wasted.

Based upon the facts available, the Court concludes that Section 12.50(b) applies here. The actions of all three directors—Bosworth, Ehrenreich and Scalice—have created a deadlock on the board. Even though the Shareholders Agreement provides for three votes on the board of directors, the events of February 10, 1993, in which Scalice purportedly resigned as a director, leave the constitution of the board in doubt.

Furthermore, given the ever-shifting allegiances among the three board co-owners over the past four months, it is quite possible that one or more of them in the near future will act in a manner that is oppressive toward one or more of the others. In fact, the Court finds that the actions of Scalice and Ehrenreich, in voting to terminate Bosworth's employment on May 21, 1993, was oppressive.

Such action by the defendants demonstrates the kind of arbitrary, overbearing and heavy-handed course of conduct that the Illinois courts have held to be "oppressive." *See Hager–Freeman v. Spircoff,* 229 Ill. App.3d 262, 171 Ill.Dec. 1, 10, 593 N.E.2d 821, 830, *appeal denied,* 146 Ill.2d 627, 176 Ill.Dec. 797, 602 N.E.2d 451 (1992). The fact that Ehrenreich completely changed his position, repudiating his earlier acceptance of

Scalice's resignation of February 10, 1993, gives further credence to Bosworth's claims of oppression and director deadlock.

Ehrenreich's change in position is also relevant in another respect. Under the doctrine of "judicial estoppel," a party who assumes a particular position in a legal proceeding is barred from asserting later a contradictory or inconsistent position. *See Delgrosso v. Spang and Co.*, 903 F.2d 234, 241 (3d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). In his signed declaration of May 24, 1993, filed with the Court, Ehrenreich takes the position that Scalice did not resign on February 10, 1993 and was able to vote to terminate Bosworth as an employee. (*Id.* at 3). This contradicts Ehrenreich's statement at page 7 of his affidavit of May 11, 1993, *only 13 days earlier,* that on February 10, 1993 Scalice "chose to resign" from Hi–Pro. Ehrenreich had relied upon this earlier position, that Scalice had resigned, in opposing Scalice's application for the appointment of a receiver in the *Scalice v. Ehrenreich et al.,* Civil No. 93–1855, action.

Under Illinois law, the court should appoint a provisional director after considering the best interests of the corporation, not those of the various factions in the litigation. *Abreu v. Unica Industrial Sales, Inc.,* 224 Ill.App.3d 439, 166 Ill.Dec. 703, 707, 586 N.E.2d 661, 665 (1991). The appointment serves as a less drastic alternative to dissolving the corporation and is meant "to help guide the company through a crisis towards the goal of stabilization and prosperity." *Id.*

The Court has decided that, although Bosworth, and until recently, Ehrenreich, contend that Scalice resigned as a director on February 10, the Court sees no reason why Scalice cannot serve on the board pending a final resolution of this issue by the arbitrator. The Court recognizes that this means that a provisional director adds a fourth vote to the board. Therefore, the Court will follow Bosworth's suggestion that the provisional director be allowed to cast *two* votes. This avoids the possibility of a 2–2 split among the four directors' votes.

The Court believes that the presence of a provisional director on the board, especially one with no ties to the three other directors, is likely to have a stabilizing effect on the corporation which it badly needs. Without such a provisional director, the Court fears for the corporation's survival, even in the near term, given the inability of the other three directors to work out their differences.

Furthermore, the Court notes that the parties are free to seek modification or dissolution of this order in the Southern District. Pending arbitration of the issues in this action, that court may review the situation and take whatever measures it deems appropriate within the law.

### 2. Irreparable Harm Without the Requested Relief

In the Third Circuit, a movant for a preliminary injunction must show more than a mere risk of irreparable harm. He or she must make a "clear showing of immediate irreparable injury." *Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). The movant must show harm that is "irreparable—not merely serious or substantial." *A.O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 525 (3d Cir.1976). This requirement is not met where the injury is purely economic, and money may eventually compensate the movant for the loss. *Frank's GMC Truck Center v. GMC,* 847 F.2d 100, 102 (3d Cir.1988).

In certain cases, however, the courts of this circuit will consider a provision in a statute which authorizes injunctive relief on a showing of probable cause to believe the statute is being violated as a substitute for a finding of irreparable harm. *Government of Virgin Islands, Dep't of Conservation and Cultural Affairs v. Virgin Islands Paving, Inc.,* 714 F.2d 283, 286 (3d Cir.1983). In such cases, the granting of the injunction is seen as serving the public interest, as expressed by the legislature in enacting the statute. *Instant Air Freight v. C.F. Air Freight,* 882 F.2d 797, 800 (3d Cir.1989).

The Illinois statutes clearly authorize the court's appointing a provisional director in cases where the financial stability of a closed corporation is imminently threatened. *See Abreu,* 166 Ill.Dec. at 707, 586 N.E.2d at 665.

As discussed above, the Court finds that Hi-Pro's financial stability is imminently threatened.

Even if there were not a statutory provision which applied here, the Court finds that Bosworth faces likely irreparable harm in his loss of opportunity to work in the business of producing "sculptured" sports cards. At age 68, Bosworth would find it extremely difficult to start another business. *See Fitzgerald v. Mt. Laurel Racing, Inc.*, 607 F.2d 589, 601 (3d Cir.1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980).

Therefore, the Court finds that the irreparable harm requirement is met here.

### 3. Potential Harm to Other Interested Persons

The Court concludes that this factor weighs in favor of granting preliminary relief. With the erratic behavior of the co-owners of Hi-Pro in recent months, the Court finds that creditors and distributors who deal regularly with the corporation would benefit from a more stabile environment on the board of directors.

### 4. Public Interest

The United States Supreme Court has observed that "parts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Instant Air Freight*, 882 F.2d at 803 (quoting *Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937)). When the public interest has been formalized in a statute, this principle applies even more strongly. *Id.*

The public interest here is formalized in the Illinois corporate statutes, which specifically provide for the appointment of a provisional director to help guide a troubled corporation through a crisis and toward stabilization. *See Abreu*, 166 Ill.Dec. at 707, 586 N.E.2d at 665. The Court, therefore, finds that this factor weighs in favor of the requested injunctive relief.

### C. The Most Appropriate Relief

Fed.R.Civ.P. 65(d) provides that every order granting an application for an injunction "shall be specific in terms" and "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." An injunction should not be drawn any more broadly than necessary to restrain the unlawful conduct. *Educational Testing Services v. Katzman*, 793 F.2d 533, 545 (3d Cir.1986).

Bosworth has made two, alternative requests: (1) He wishes the Court to order Scalice and Ehrenreich to sell him back his shares in the corporation; or (2) to appoint a provisional director with two votes on the board. For the following reasons, the Court will take the second suggested course of action.

In light of the arbitration clause in the Shareholders Agreement, the Court finds it would be inappropriate to enforce a buyout for Bosworth pending arbitration. Bosworth can be adequately compensated, if necessary, after the arbitration has run its course.

The Court will, however, continue in force parts (a), (b) and (c) of the preliminary restraints it imposed May 24, 1993. These restraints, in part, allow Bosworth to continue as an employee of Hi-Pro, receive a salary, and use the Fort Lee, N.J. offices. The Court will also continue the $5,000 bond Bosworth has already posted.

On the other hand, the Court will modify parts (d) and (e) of those restraints, which now apply only to the defendants. The Court will enjoin any party to this litigation from: (d) engaging in any transaction regarding the issuance, sale, transfer, pledge or other commitment of stock of Hi-Pro; and (e) selling or disposing of any of Hi-Pro's assets other than in the ordinary course of business.

The Court has reviewed the suggestions by the plaintiff and the defendants for the office of provisional director. However, the Court has decided that the best interests of the corporation, and the public, are served by appointing a provisional director not affiliated in any way with either side.

The Court, therefore, appoints Robert J. Chalfin, Esq., as provisional director for Hi-Pro. His primary purpose will be to attempt to provide a unifying influence on the warring factions in the corporation. He will be able to cast two votes at meetings of the board. Except as provided by this Court, he will act according to the by-laws and the Shareholders Agreement. In accordance with Section 12.55(d) of the Illinois Act, the provisional director shall report to the Court in the Southern District, whenever appropriate, concerning the status of the corporation's business.

As provided in Section 12.55(e), the Court will allow reasonable compensation to be paid to the provisional director for services rendered and reimbursement of reasonable costs and expenses, which amounts shall be paid by the corporation. The Court orders that the corporation pay the provisional director at the rate of $225 per hour, plus costs.

### D. Scalice's Motions to Compel Arbitration and Stay the Action

In light of the Court's conclusions that this matter is arbitrable and that arbitration should take place in New York, N.Y., the Court dismisses as moot Scalice's motions to compel arbitration and to stay the action pending arbitration. Scalice, if he wishes, may re-file these motions in the Southern District of New York.

### III. CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part Bosworth's application for a preliminary injunction. The Court also transfers venue under 28 U.S.C. § 1406(a) to the Southern District of New York and dismisses as moot Scalice's motion to compel arbitration and for a stay of this action pending arbitration. An appropriate order follows.

### ORDER IMPOSING PRELIMINARY RESTRAINTS AND TRANSFERRING VENUE

This matter having come before the Court by order to show cause, filed by the plaintiff, John Bosworth, and on motions by the defendant, John Scalice, to compel arbitration and to stay this action pending arbitration; and

The Court having granted a temporary restraining order on May 24, 1993, under Fed.R.Civ.P. 65; and

The Court having considered the verified complaint, brief and other papers filed in support thereof, and the brief and other papers filed in opposition; and

Having heard the arguments of counsel at a hearing on June 3, 1993; and

The Court having concluded that, absent the continued imposition of certain preliminary restraints, as modified below, and the appointment of a provisional director, immediate and irreparable harm will likely occur to the plaintiff and to the corporation, Hi-Pro Marketing, Inc.; and

For the reasons set forth in the Court's opinion filed this date; and

For good cause shown;

It is on this 8th day of June, 1993 ORDERED that the motions by the defendant, John Scalice, to compel arbitration and to stay the action pending arbitration are hereby DISMISSED as moot; and

It is further ORDERED that:

(1) the defendants are preliminary enjoined and restrained from:

(a) terminating the employment of Bosworth with Hi-Pro;

(b) altering the compensation of Bosworth; and

(c) removing Bosworth from Hi-Pro's Fort Lee, N.J. offices.

(2) all parties in this matter, including the plaintiff and the defendants, are enjoined and restrained from:

(a) engaging in any transaction regarding the issuance, sale, transfer, pledge or other commitment of stock of Hi-Pro;

(b) selling or disposing of any of Hi-Pro's assets other than in the ordinary course of business; and

(c) implementing the resolutions and/or agreements of Defendants, Scalice and Ehrenreich, as reflected in the Minutes of a Special Meeting of the Board of Directors

of Hi–Pro Marketing, Inc., held on May 21, 1993.

(3) Robert J. Chalfin, Esq., is appointed Provisional Director of Hi–Pro, pursuant to Ill.Ann.Stat. ch. 5, para. 12.55. The Provisional Director shall act in the best interests of the corporation and is authorized to exercise *two* votes at Board of Directors meetings. The corporation shall compensate the Provisional Director at the rate of $225 per hour, plus costs and expenses.

(4) Melvin Ehrenreich shall appear in New Jersey, at a place to be determined by mutual agreement of the parties in this action, for a deposition not later than June 14, 1993.

(5) The bond for preliminary restraints posted by the plaintiff, John Bosworth, in the fact amount of $5,000, shall remain in effect.

(6) Venue is hereby transferred under 28 U.S.C. § 1406(a) to the United States District Court for the Southern District of New York.