**QAI, INC., Cheetah Communications, LLC, Plaintiffs,**

v.

**SPRINT COMMUNICATIONS, CO., Defendant.**

**No. SA CV 00–958 AHS (EEx).**

United States District Court, C.D. California, Southern Division.

Nov. 14, 2000.

David. A. Robinson, David Z. Ribakoff, Enterprise Counsel Group, Irvine, CA, for plaintiffs.

John Lazar, Manatt, Phelps & Phillips, L.L.P., Los Angeles, CA, for defendant.

OPINION ON ORDER DENYING PRELIMINARY INJUNCTION

STOTLER, District Judge.

### I.

### *INTRODUCTION*

Plaintiffs, Cheetah Communications ("Cheetah") and QAI, Inc. ("QAI"), moved

for a preliminary injunction to enjoin defendant Sprint Communications Company ("Sprint") from terminating service during the period in which the parties would be resolving a billing dispute in an arbitration already filed with the American Arbitration Association and pending in Kansas City, Missouri. Plaintiffs' application for a preliminary injunction raised the question of whether a district court, located outside the situs in which the parties have agreed to arbitrate any disputes arising from the parties' contract, may exercise jurisdiction in order to maintain the "status quo" pending completion of the arbitration. The Court denied relief to plaintiffs on the ground that the parties' contract controlled their relations, since that document specified that all "disputes arising or relating" thereto shall be submitted to arbitration in Missouri, arbitration was already pending there, and the plaintiffs' remedy, if any, lay in the parties' chosen venue.

## II.

### FACTUAL AND PROCEDURAL HISTORY

Cheetah is a "switchless reseller" of long distance service. Cheetah buys long distance from various suppliers, including Sprint on a wholesale basis. Cheetah, in turn, resells the long distance service to, among others, co-plaintiff QAI. Cheetah and Sprint entered into a service agreement in November 1997. By the terms of that agreement, the parties agreed to resolve by arbitration, via the services of the American Arbitration Association, any dispute arising out of or relating to the agreement. The contract designated Kansas City, Missouri as the location of arbitration proceedings. A choice of law provision in the agreement states that the parties' contract is governed by Kansas law.

On May 25, 2000, Sprint filed a demand with the American Arbitration Association and initiated arbitration proceedings in Kansas City, Missouri. Before the arbitration panel had been selected, the billing dispute between Sprint and Cheetah escalated, and Sprint notified Cheetah of its intent to terminate service, under certain terms of the contract, if Cheetah failed to make certain payments that are the subject of the billing dispute. Sprint demanded that Cheetah make specified payments by October 4, 2000, or face termination of service.

On October 3, 2000, Cheetah and QAI applied in the Central District of California for a temporary restraining order to prevent Sprint from terminating service on the date specified in Sprint's notice. The Court granted the plaintiffs' request, temporarily restraining Sprint from terminating Cheetah's long distance service. The Court ordered Sprint to show cause why Sprint should not be preliminarily enjoined from terminating Cheetah's long distance service pending final resolution of the ongoing billing dispute.

On October 13, 2000, the Court heard oral argument on Cheetah's motion for a preliminary injunction. After having considered the moving, opposition and reply papers, the authorities cited, the declarations, exhibits, and oral arguments of counsel, the Court declined to reach the merits of plaintiffs' motion for injunctive relief. Rather, the Court found the Central District of California to be an improper venue for plaintiffs' motion to preliminarily enjoin defendant in light of the parties having begun, as contracted, arbitration proceedings in Kansas City, Missouri. Plaintiff QAI, the Court found, independent of Cheetah, had not been shown to have standing to enforce the contested contractual provisions or enjoin Sprint from terminating service.

The order to show cause for issuance of a preliminary injunction was therefore discharged and denied without prejudice. The Court ordered the temporary restraining order to remain in effect for an additional ten days, through October 23, 2000, in order to permit plaintiffs to seek appellate review in an orderly fashion or file their request for injunctive relief else-

where. On October 30, 2000, the Court issued its Findings of Fact and Conclusions of Law as required by Fed.R.Civ.P. 65.

## III.

### SUMMARY OF PARTIES' CONTENTIONS

A. *Plaintiffs' Motion for Preliminary Injunction*

Plaintiffs argue that this Court has the power to grant injunctive relief pending resolution of the Kansas City arbitration proceeding. Alternatively, plaintiffs argue that defendant's billing practices are tantamount to activities of unfair competition in violation of section 17200 of the California Business and Professions Code, and violation of that statutory scheme warrants injunctive relief pursuant to section 17203 of that code.

Plaintiffs cite *PMS Distrib. Co. v. Huber & Suhner, A.G.,* 863 F.2d 639 (9th Cir. 1988), for the proposition that the Court of Appeals for the Ninth Circuit, aligning itself with the Seventh, Second, and First Circuits, allows a district court to grant injunctive relief pending the outcome of arbitration. *See Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348 (7th Cir.1983) (finding plaintiffs seeking injunctive relief to enforce the terms of a contract did not thereby waive their right to arbitrate the dispute); *Roso–Lino Beverage Distrib. v. Coca–Cola Bottling Co.,* 749 F.2d 124 (2d Cir.1984) (finding that a district court had concurrent authority to order parties to arbitrate and issue a preliminary injunction pending the outcome).

In *PMS Distrib.,* the court was faced with an issue of first impression as to whether a district court's order to compel arbitration stripped that same district court of authority to subsequently issue provisional relief pending arbitration, namely, a writ of possession. The Ninth Circuit was persuaded by the reasoning of the First Circuit in *Teradyne, Inc. v. Mos-*

*tek Corp.,* 797 F.2d 43 (1st Cir.1986) which explained that "the Congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and ipso facto, the meaningfulness of the arbitration process." *PMS Distrib.,* 863 F.2d at 641–42 (quoting *Teradyne,* 797 F.2d at 51).

Relying on *PMS Distrib.,* plaintiffs proceed to present their likelihood of success on the merits of the billing dispute and the irreparable injury that would ensue absent injunctive relief. Despite their discussion of the merits, plaintiffs concede that the primary question is whether the dispute must be arbitrated before Sprint can proceed to terminate service. Plaintiffs premise their likely success both on the terms of the contract itself as well as Sprint's alleged violation of section 17200 of the California Business and Professions Code.

B. *Defendant's Opposition*

Defendant Sprint points to the language of Section 4 of the Federal Arbitration Act which directs parties to the appropriate district to which they are to petition for an order to compel arbitration. Section 4 provides that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

Sprint relies primarily on the Seventh Circuit and its interpretation of section 4 to allow a district court to compel arbitration only if arbitration, as agreed by the parties, is to occur in that judicial district. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 328 (7th Cir.1995). In *Lauer,* the plaintiff demanded arbitration in response to an investment dispute. *See id.* at 325. Plaintiff requested to arbitrate in Tampa, Florida before the National Association of Securities Dealers ("NASD"). The defendant con-

sented to arbitration but requested that the arbitration occur in Illinois. Nevertheless, NASD selected Tampa, Florida as the arbitration site. Subsequently, defendant petitioned an Illinois District Court to compel arbitration in that district as well as dismiss certain claims that were subject to the Florida arbitration. *See id.* In response, the plaintiff moved in a Florida District Court to compel arbitration in Florida, as had been selected by NASD and was scheduled to proceed on a date certain. *See id.* at 326. The Seventh Circuit interpreted section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to "allow parties who feel that their case is not being arbitrated, or is being arbitrated improperly, to petition the Court for an order compelling arbitration." *Id.* at 326.

In *Lauer*, the court specifically considered "whether the Northern District of Illinois court was an appropriate candidate for a § 4 motion in this dispute given the prearbitration proceedings that had already taken place in Florida." *Id.* at 326. Applying the language of section 4 of the Federal Arbitration Act to the facts of *Lauer*, the Seventh Circuit concluded that when the arbitration location has already been designated, the statute limits accordingly the judicial districts that can compel arbitration to those geographically linked to the location of arbitration. *See id.* at 327.

In the event venue is proper, Sprint presents arguments disputing both Cheetah's likelihood of success and the irreparable harm that Cheetah allegedly would suffer absent issuance of injunctive relief. Further, Sprint contends that an injunction is not appropriate on California statutory grounds as plaintiffs have made an inadequate showing of Sprint's having engaged in unfair competition by means of its billing practices.

## C. *Plaintiffs' Reply*

In response to defendant's assertions of improper venue, plaintiffs rely on the literal language of section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. which states that

[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any* United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). However, that section goes on to state, as quoted earlier, that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing arbitration is filed." 9 U.S.C. § 4.

Plaintiffs urge the Court to adopt the literal language of the first portion of the statute directing parties to petition *any* United States District Court for an order compelling arbitration. Further, discounting the Seventh Circuit interpretation of section 4 to require such an order to issue from the district where the arbitration is to occur (in light of the subsequent statutory language to that effect), plaintiffs conclude that, absent Ninth Circuit law on the construction of section 4, this district court has the authority to grant provisional relief.

Finally, plaintiffs further assert that, independent of injunctive relief to preserve the parties' long distance service arrangement pending resolution of the disputed construction of the contract, the Court should grant injunctive relief to prevent Sprint from committing further violations of California's unfair competition laws.

## IV.

### DISCUSSION

A. *Contractual and Statutory Grounds for Injunction Are Subject to Arbitration*

In denying plaintiffs' requested preliminary injunction, the Court took the view

that plaintiffs' statutory-based claim is subject to the arbitration, and hence any injunctive relief pertaining to that arbitrable matter may be addressed by the court located in the district of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (finding no "warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims"); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (stating that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). Sprint and Cheetah agreed by the arbitration clause that "[a]ny dispute arising out of or relating to the Agreement will be finally settled by arbitration in accordance with the rules of the American Arbitration Association." In *Alpert v. Alphagraphics Franchising, Inc.*, 731 F.Supp. 685, 687–88 (D.N.J.1990), the court found a similar contract instructing arbitration of claims "arising out of or relating to" the agreement to embrace statutory claims for violation of the New Jersey Consumer Fraud Act and the New Jersey Franchise Practices Act. Further, the *Alpert* court discounted plaintiff's argument that those statutes bar waiver of a judicial forum, recognizing that "a state statute that require[s] judicial resolution of a franchise contract, despite an arbitration clause, [is] inconsistent with the Federal Arbitration Act, and therefore violate[s] the Supremacy Clause." *Id.* at 688 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)); *see also AT & T Corp. v. Vision One Sec. Sys.*, 914 F.Supp. 392, 398 (S.D.Cal.1995) (finding contract's arbitration policy language addressing all disputes "arising out of" and "related to" the agreement to create a broad arbitration clause) (citing *Mediterranean Enter., Inc. v. Ssangyong*, 708 F.2d 1458, 1464 (9th Cir.1983)).

Plaintiffs' request for relief turns on whether Sprint must resolve the billing dispute in arbitration instead of invoking self-help by terminating service before arbitration is completed. Accordingly, the Court did not reach the merits of an alleged violation of California's unfair competition statutory scheme, but rather addressed whether this district was the proper venue to adjudicate the request for provisional relief.

### B. *Order Compelling Arbitration Must Issue from District of Arbitration Situs*

The Seventh Circuit in *Lauer*, interpreting section 4 of the Federal Arbitration Act, clearly explains that there must exist a "geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." *Lauer*, 49 F.3d at 327. Plaintiffs seek to rely on the introductory language of section 4 that purportedly allows parties to petition "any United States district court" to compel arbitration. Yet, the *Lauer* court notes that such an expansive allowance "quickly narrows" to require the arbitration proceedings to occur in the district where the petition for the order to compel is filed. *See id.* at 327 (citing 9 U.S.C. § 4). Conversely, the order should issue from the district where the arbitration is to occur. *See Lauer*, 49 F.3d at 327 (concluding that the "inescapable logical import" when the arbitration location is "preordained, is that the statute limits the fora in which § 4 motions can be brought") (citing *Lawn v. Franklin*, 328 F.Supp. 791, 793 (S.D.N.Y.1971) (finding that "[t]he proper District within which the petition for such order should be filed is the District where the 'proceedings' by virtue of the contract of the parties are to take place")); *see also Kim v. Colorall Tech.*, No. C–00–1959–VRW, 2000 WL 1262667, *1 n. 1 (N.D.Cal. Aug.18, 2000) (relying on the Seventh Circuit's opinion in *Lauer* in stating that a district court can only compel arbitration to occur in its own district).

The geographic nexus limits a district court's authority to issue orders in arbitration proceedings occurring outside that district. For example, in *Horizon Plastics v. Constance,* No. Civ. A 99–6132, 2000 WL 1176543 (D.N.J. August 11, 2000), the plaintiff petitioned a New Jersey district court to enjoin arbitration proceedings initiated by defendant in New York. The court, in determining its authority to grant an injunction to stay arbitration proceedings, found an absence of any "principled distinction" between compelling arbitration and staying arbitration. *See id.* at 4. The court characterized both types of judicial actions as injunctive relief, specifically injunctive relief to have effect in another district where the arbitration is to occur. *See id.* The court concluded that venue in a New Jersey court was improper for the application to enjoin New York arbitration proceedings. *See id.*

## C. *Injunctive Relief Pending Arbitration Should be Sought Elsewhere*

Plaintiffs' reliance on *PMS Distrib.*—for the proposition that injunctive relief in the Central District is appropriate pending arbitration—is misplaced. In *PMS Distrib.,* plaintiff petitioned the Central District to compel arbitration. This district court granted the petition. *See id.* at 640. Five months later, defendants applied to the same district court for issuance of a writ of possession; the court granted that writ. *See id.* The Ninth Circuit relied on the First, Second, and Seventh circuit cases where parties sought injunctive relief pending arbitration. The court concluded that the district court's having ordered arbitration under section 4 of the Arbitration Act "does not strip it of authority to grant a writ of possession pending outcome of the arbitration . . . ." *Id.* at 642. Pursuant to that finding, the court found that while arbitration is pending, the parties could return to the district court to seek provisional relief after the court had ordered arbitration. *See id.*

Notably, in two of the cases on which *PMS Distrib.* relies, the same court issued both the order to compel arbitration as well as ruled on the issuance of injunctive relief. *See Roso–Lino,* 749 F.2d at 125 (affirming the district court's order to arbitrate and reversing that court's denial of plaintiff's motion for preliminary injunction noting that "the district court believed its decision to refer the dispute to arbitration stripped the court of power to grant injunctive relief"); *Teradyne,* 797 F.2d at 51 (holding that the district court was not in error by issuing a preliminary injunction before ruling on arbitrability of the dispute).

The court in *PMS Distrib.* also relied on the Seventh Circuit decision in *Sauer–Getriebe KG* which held that injunctive relief and the right to arbitrate are not incompatible and found the district court to have authority to issue injunctive relief while the matter awaited arbitration. *See Sauer–Getriebe KG,* 715 F.2d at 350. In that instance, the plaintiff had filed a complaint seeking injunctive relief. In its complaint, plaintiff noted that it intended to request arbitration pursuant to the agreement between the parties calling for arbitration by an International Commercial Contract ("ICC") court of arbitration. *See id.* at 350. The rules of the ICC court expressly allow a party to seek provisional relief before the matter is arbitrated. "Before the file is transmitted to the arbitrator, and in exceptional circumstances even thereafter, the parties shall be at liberty to apply to any competent judicial authority for interim or conservatory measures . . . ." *Id.* (quoting Article 8, Section 5 of the internal rules of the ICC court of arbitration). In *Sauer–Getriebe* the plaintiff applied to the court for injunctive relief before arbitration proceedings were even demanded. Further, due to the unique language of the arbitration rules of the ICC by which the parties agreed to be bound, interim relief was available before the matter went to the arbitrator; but even under the ICC rules, only exceptional circumstances warranted interim relief af-

ter the file was transmitted to the arbitrator. *See id.* The Seventh Circuit, as discussed *supra*, subsequently expanded its jurisprudence on the district court's role when arbitration is to proceed in a designated location, holding in *Lauer* that the proper court to compel arbitration is the court sitting where the arbitration is to occur.

The *Lauer* court did cite one instance where a district court found it appropriate to grant provisional relief in a matter to be submitted to arbitration outside that district. *See Bosworth v. Ehrenreich*, 823 F.Supp. 1175 (D.N.J.1993). In *Bosworth*, the parties had contracted to arbitrate in New York. Plaintiff filed an application for preliminary injunction in a New Jersey district court. In response, defendant filed a motion to stay the action pending arbitration. The court found that it lacked the power to compel arbitration outside the District of New Jersey. By the same token, it granted a preliminary injunction but only pending the commencement of arbitration proceedings in New York. Then, the court transferred venue to the Southern District of New York. *See id.* at 1184. *Bosworth* purported to rely on *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806 (3d Cir.1989), for the proposition that injunctive relief in the arbitrable matter was both warranted and could be issued from an outside district. However, *Ortho Pharmaceutical*, while permitting injunctive relief pending arbitration, does not squarely address the proper venue for issuance of such relief. *Bosworth* is further distinguishable from the instant case in that the parties had not begun arbitration and the injunctive relief issued by the New Jersey district court expired once the arbitration commenced.

Several states' laws governing arbitration are consistent with the instant ruling by requiring provisional relief to issue from the *county* where the arbitration proceeding is pending. *See, e.g.,* Cal. Civ. Code § 1281.8(b) ("A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief."); N.Y. C.P.L.R. 7502(c) ("The supreme court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a), may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief...."); GA.Code Ann. § 9–4–4(e) ("The superior court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subsection (b) of this Code section, may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.").

The weight of authority holds that the proper venue for bringing an action seeking injunctive relief pending arbitration lies in the district where the arbitration proceedings are occurring. A policy of requiring injunctive relief to issue from the court where an arbitration is taking place also forecloses the possibility of forum shopping. In *Lauer*, the court noted that the Seventh and Eleventh circuits were split on whether the court or arbitrator resolved the allowance of particular claims pertaining to punitive damages and claims older than six years. *See Lauer*, 49 F.3d at 325–26. Compelling arbitration in Illinois instead of Florida would have made a significant impact on the resolution of the dispute, given the differing rulings between the relevant circuits. Hence, the

*Lauer* court found the geographic link between the location of arbitration and the order compelling arbitration a necessary connection to prevent forum shopping. *See id.* at 330; *see also Bao v. Gruntal & Co.,* 942 F.Supp. 978, 984 (D.N.J.1996) (finding that a "split among the Circuits with respect to the issue of who decides arbitrability under the six-year rule ... would encourage the forum shopping that § 4 was designed to prevent"). Moreover, the *Lauer* court, in finding Florida to be the proper venue for compelling arbitration and determining the arbitrability of certain issues, reasoned that application to an Illinois court added another "layer" of judicial involvement in contravention of judicial economy. *See Lauer,* 49 F.3d at 330.

This Court may properly consider "forum shopping" in this case, because the Ninth Circuit in its *PMS Distrib.* case allows for injunctive relief pending arbitration, whereas, as defendant points out, the law of the Tenth Circuit, which governs Cheetah and Sprint's contracted location of arbitration, does not appear to allow injunctive relief. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Scott,* No. 83–1480 (10th Cir. May 12, 1983) (vacating by order and without formal opinion a preliminary injunction that the district court had granted pending arbitration).

Because the results may differ, depending on whether plaintiffs file in the Tenth versus the Ninth Circuit, the Court should, on that additional ground, deny plaintiffs' application for injunctive relief.

## V.

### CONCLUSION

For the reasons set forth above, the Court holds that plaintiffs have applied to the wrong court for injunctive relief pending arbitration. The court retains the temporary restraining order an additional ten days, for the reasons above stated, after which the temporary restraining order is dissolved and the bond is exonerated.

IT IS SO ORDERED.