**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and Patrick Palella, Plaintiffs–Appellees,**

v.

**Peter H. LAUER and Therese A. Lauer, Defendants–Appellants.**

**No. 94–2297.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1995.

Decided March 1, 1995.

Rehearing Denied April 4, 1995.

Peter A. Cantwell (argued), Stephen F. Boulton, Thomas A. Lidbury, John S. Burke, Cantwell & Cantwell, Chicago, IL, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Christopher J. Barber (argued), William T. McCartan, Christopher C. Kendall, Coffield, Ungaretti & Harris, Chicago, IL, for Patrick Palella.

David A. Shaneyfelt, Bruce J. Van Heukelem (argued), Hoogendoorn, Talbot, Davids & Godfrey, Chicago, IL, for Peter H. Lauer, Therese A. Lauer.

Before CUMMINGS and KANNE, Circuit Judges, and GRANT, District Judge.[*]

CUMMINGS, Circuit Judge.

This appeal concerns an arbitration currently pending in Florida and a court proceeding in the Northern District of Illinois that dramatically influenced the arbitration's potential course. Responding to a motion from plaintiffs Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") and account broker Patrick Palella ("Palella") (plaintiffs referred to collectively as "Merrill Lynch"), the district judge entered an order compelling the plaintiffs in the underlying Florida arbitration, Peter and Therese Lauer, to eliminate certain of their claims against Merrill Lynch and account broker Palella. Judge

Shadur's conclusions regarding the effect of Seventh Circuit precedent on these claims were correct, and we have no quarrel with his reading of our case law in these areas. But because we conclude that his issuance of an order regarding a distant arbitration hearing contravenes the language and purpose of the Federal Arbitration Act ("FAA"), we vacate the order and remand for dismissal of this action.

## BACKGROUND

### I. Prior Proceedings

The Lauers first opened accounts with Merrill Lynch over 10 years ago, with Palella serving as their broker. Over the next decade they shifted their accounts among Merrill Lynch and other brokerage services, generally following Palella as he changed jobs, but returned exclusively to Merrill Lynch in September 1990. At that time, on opening a retirement account, they signed a new Customer Agreement delineating their rights and obligations with respect to their investments.

The Customer Agreement contained several clauses that are relevant to the present action. The first required the Lauers, along with Merrill Lynch, to submit any future claims to arbitration.[1] The second, a rather obtuse choice-of-law provision, instructed the Lauers that New York law would govern certain of the claims they might bring, including those involving their retirement account.[2]

---

[*] The Hon. Robert A. Grant, District Judge for the Northern District of Indiana, is sitting by designation.

1. The Customer Agreement provided in pertinent part that:

   The parties are waiving their right to seek remedies in Court....

   [A]ll controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us whether entered into prior, on or subsequent to the date hereof shall be determined by arbitration.

   Def.Br. at 6.

2. The choice-of-law clause states that:

   This Agreement, with respect to all portions of the CMA Service, including interest charges on loans you may make to me, will be governed

by and interpreted under the laws of the state of New York. The terms of my agreement with MLB & T, including those relating to the issuance of the Card, are governed by Federal and New Jersey law. The terms of my agreement with MLNF, including those relating to finance charges, are governed by Federal law and, except to the extent my state law explicitly applies, Utah law. The terms of my agreement with Bank One are governed by Ohio law. Def.Reply Br. at 5. We note in passing that the wording of this choice-of-law clause does not appear designed to inform customers of the applicable law in a readily comprehensible fashion. Choice-of-law clauses are indeed enforceable in arbitration agreements; but they should clarify *rather than obfuscate.*

By 1993, the Lauers had come to believe that their investment account was being handled improperly and that they had been duped about the health of their retirement funds. Accordingly, in March 1993 the Lauers initiated a demand for arbitration against Merrill Lynch, electing to proceed before the National Association of Securities Dealers ("NASD").[3] The complaint alleged, *inter alia*, that certain of the investments made for the Lauers were unsuitable, that their assets were "churned"—excessively traded for the purpose of generating commissions—and that Palella misled them by providing inaccurate summaries of their holdings on which they detrimentally relied. The Lauers requested a hearing in Florida, where they had relocated. Merrill Lynch formally consented to arbitration in June 1993, but sought an Illinois arbitration site. By August 1993, however, the NASD had selected Tampa, Florida, as the arbitration site and had set March 14, 1994, as the date of hearing. Both sides commenced prehearing discovery.

On January 3, 1994, Merrill Lynch filed an action in the Northern District of Illinois, seeking to compel arbitration in that district and to force the Lauers to eliminate both their claims for punitive damages and all claims involving investments made more than six years before the complaint was filed. In support of the request regarding damages, Merrill Lynch relied on *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976), which held that under New York state common law, arbitrators may not award punitive damages. More to the point, Merrill Lynch cited several recent Seventh Circuit cases which have upheld the *Garrity* rule when New York law is incorporated into arbitration agreements via a choice-of-law provision. These cases have rejected arguments that the federal common law of arbitration permits the award of punitive damages and preempts state law such as *Garrity*.[4]

With respect to the "stale" claims argument, Merrill Lynch referred to an NASD provision barring arbitration of claims more than six years old.[5] Seventh Circuit precedent has interpreted this provision as a jurisdictional limitation subject to disposition by the courts, not an eligibility issue to be resolved by the arbitrator.[6]

The Lauers opposed Merrill Lynch's motion, both arguing against its substantive merits and challenging resort to the Northern District of Illinois on venue or jurisdic-

---

3. The arbitration clause provided for such an election by the customer, and stated in pertinent part that:

> Any arbitration under this agreement shall be conducted only before the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or arbitration facility provided by any other exchange, the National Association of Securities Dealers, Inc., or the Municipal Securities Rule Making Board, and in accordance with its arbitration rules then in force.

Def.Br. at 6.

4. See *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713 (7th Cir.1994) (the most recent of several Seventh Circuit cases to hold that an arbitration agreement referencing New York law incorporated New York's ban on punitive damages in arbitration awards), certiorari granted, —— U.S. ——, 115 S.Ct. 305, 130 L.Ed.2d 218. The Supreme Court heard oral argument in *Mastrobuono* on January 10, 1995, concerning the contention that federal arbitration law, which is receptive to the concept of punitive damages, preempts state law which is hostile to punitive damages awards. Should *Mastrobuono* be overturned on appeal it might well simplify the question whether any federal court should disallow claims for punitive damages in deference to New York state law. Since we feel that the district court should not have considered this issue in the first place, we need not await this clarification from the Supreme Court.

5. Section 15 of the NASD Code provides that:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the *occurrence or event* giving rise to the act or dispute, claim, or controversy.

Def.Br. at 8 (emphasis supplied).

6. The most recent Seventh Circuit case to express this view was *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir.1992). *Sorrells* did not address exactly what constitutes an "occurrence or event" that would trigger the six-year period, but at least one district court in the Northern District of Illinois has concluded that the "date of investment" is implicated. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jana*, 835 F.Supp. 406, 411 (N.D.Ill.1993). We express no view on the merit of the position that "occurrence or event" refers unambiguously to the date of the original transaction.

tional grounds. Subsequently the Lauers filed their own motion in the Northern District of Florida to compel arbitration there, where the NASD had ruled that the arbitration was to proceed—and where, not coincidentally, the New York ban on punitive damages has been disallowed in FAA cases and the NASD six-year limitation has been deemed an issue for the arbitrator to resolve. See *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378 (11th Cir.1988) (allowing for possibility of punitive damages despite New York choice-of-law clause); *Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 693 F.2d 1023 (11th Cir.1982) (holding that the arbitrator should determine whether claims are time-barred). The court below declined to compel arbitration here, but the judge granted Merrill Lynch what he deemed the "other relief" requested: he ordered the Lauers to eliminate their claim for punitive damages and any claim more than six years old. This appeal followed.

## II. The Federal Arbitration Act

The "whys" of all this forum shopping are self-evident: If the Northern District of Illinois decides arbitrability, the Lauers lose a chunk of their claims; if the decision rests with the Northern District of Florida, both punitive damages and potentially stale claims may go to the arbitrator for resolution. The "hows," however, depend on provisions of the FAA, which facilitates the removal of some disputes from our federal court system while allowing for limited judicial supervision of these cases.

Generally, judicial intervention in potentially arbitrable disputes takes one of a few discrete forms: (1) § 3 of the FAA requires a court confronted with a dispute that is referable to arbitration to stay its proceedings until arbitration is concluded; (2) § 4 allows parties who feel that their case is not being arbitrated, or is being arbitrated improperly, to petition the court for an order compelling arbitration on the proper terms; (3) § 9 permits a party to move a court to enforce an arbitration award; (4) § 10 allows

a party to move the court to vacate an award if in making it the arbitrator exceeded his powers; and (5) § 11 provides for judicial modification or correction of awards under limited circumstances. Moreover, federal courts are charged with the initial task of interpreting the arbitration agreement to determine whether the parties agreed to arbitrate the particular dispute. See *AT & T Technologies, Inc. v. Communications Workers of America, et al.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ("the question of arbitrability ... is undeniably an issue for judicial determination"). Although they cannot reach the merits of a particular dispute, the federal courts may play an important role in affecting arbitration.

Both Merrill Lynch and the Lauers invoked § 4 of the FAA before the respective district courts in which they sought relief. Merrill Lynch, which was quicker on the draw, got it, while the Lauers had to content themselves with a stay and this appeal.[7] The question is not whether the district judge correctly read our precedents in issuing the order; it is whether the Northern District of Illinois court was an appropriate candidate for a § 4 motion in this dispute given the prearbitration proceedings that had already taken place in Florida. Because this issue presents a question of statutory construction—not, as Merrill Lynch suggests, the propriety of a refusal to order transfer from one acceptable venue to another—*de novo* review is appropriate. *Resolution Trust Corp. v. Gallagher,* 10 F.3d 416, 418 (7th Cir.1993).

## ANALYSIS

Our analysis of the district court's power to order the relief requested in the *instant* case thus begins with § 4 of the FAA, which both prescribes authority and assigns limitations to federal courts in adjudicating arbitrable disputes. Does § 4 authorize a district court to compel a party to replead its arbitration complaint when the arbitration is already slated for another district? We look first to the text for an answer. We look

---

7. Judge Shadur required the Lauers to stay or voluntarily dismiss their § 4 motion in the Northern District of Florida in order to obtain a stay of his order pending appeal. June 9, 1994 Order (contained in Record on Appeal).

beyond the express language of a statute only where such language is ambiguous, or where a literal interpretation would lead to absurd results or thwart the goals of the statutory scheme. *United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Ave., Elgin, Ill.,* 903 F.2d 490, 492 (7th Cir.1990), certiorari denied, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991).

Section 4 allots, in pertinent part, the following authority to federal district courts:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 ... for an order that such arbitration proceed in the manner provided for in such agreement.... The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. Section 4 thus explicitly provides for a judicial remedy where one party refuses to arbitrate a dispute. Moreover, case law has interpreted § 4 to extend to parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement. The instant petition presents the latter situation: Merrill Lynch argued that the Lauers, who had not only agreed to arbitration but initiated it, were exceeding the terms of the agreement by attempting to arbitrate punitive damages and potentially stale claims.

In addition to setting forth the circumstances under which parties may seek to compel relief, § 4 also establishes the appropriate venue in which they may do so. The statute does not initially prescribe a venue, stating that parties may petition "any United States district court" which would otherwise have jurisdiction. 9 U.S.C. § 4. This broad authority, however, quickly narrows. The statute subsequently mandates that "the

hearing and proceedings ... shall be within the district in which the petition for an order directing such arbitration is filed."[8] Unlike the venue provisions of § 9, which specifies that "application [for an order confirming an award] may be made to the United States court in and for the district within which such award was made," or § 10, which states that "the United States court in and for the district wherein the award was made may make an order vacating the award," the directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control. The statute is perhaps awkwardly worded for present purposes in that the mandatory language ties the location of arbitration to the district in which the motion to compel is brought. Nonetheless, the inescapable logical import in the present situation, in which the location of arbitration is preordained, is that the statute limits the fora in which § 4 motions can be brought. See *Lawn v. Franklin,* 328 F.Supp. 791, 793 (S.D.N.Y.1971) ("[a]lthough [§ 4] appears to imply that the hearing and proceedings follow the District in which the petition for an order directing such arbitration is filed, the converse would seem to follow as well. The proper District within which the petition for such order should be filed is the District where the 'proceedings' by virtue of the contract of the parties are to take place.").

In accordance with the construction of § 4 as a restriction on the authority of nonforum courts, this Circuit has concluded that where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless. See *Snyder v. Smith,* 736 F.2d 409, 419–20 (7th Cir.1984),

---

**8.** Merrill Lynch attempted to avail itself of this language by arguing to the Northern District court that it was obligated to order arbitration in this forum, despite the fact that arbitration was already pending in Florida. Plaintiffs' Complaint at 7 (contained in Record on Appeal). The

district court properly rejected this suggestion, acknowledging that it had no power to contravene the forum selection clause. Transcript of Proceedings of May 3, 1994 (reprinted in Def. Br.App.).

certiorari denied, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403. In *Snyder,* a court from the Northern District of Illinois ordered the opposing parties to arbitration in that district, despite a forum selection clause in the parties' agreement specifying that arbitration was to take place in Houston, Texas. A Seventh Circuit panel reversed, finding that § 4 precluded a district court from ordering arbitration to take place outside of its own district, and just as clearly precluded the court from ordering arbitration to take place within its district in contravention of a freely negotiated forum selection clause. The Court noted that if such tactics were allowed:

> [A]ny party to an arbitration agreement could avoid the effect of the agreed-to forum merely by filing suit in a different district. This in turn could lead to the parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations. This disregard is not what Congress intended when it enacted a statute to make arbitration agreements enforceable. Thus, the district court in this case had no power under the statute to order arbitration in its district in contravention of the parties' agreement.

*Id.* at 419–20 (citations omitted). The Court concluded that "[i]n a case like this, where the petition to compel arbitration was the only relief sought, the district court should dismiss the petition or, upon motion, stay its proceedings." *Id.* at 420.

*Snyder* is no anomaly. Numerous other cases have considered the plain language of § 4 and concluded that a district court lacks the authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration. See *Alpert v.*

*Alphagraphics Franchising, Inc.,* 731 F.Supp. 685, 689 (D.N.J.1990) (agreement provided for arbitration in Arizona but plaintiff filed motion to compel arbitration in New Jersey; New Jersey district court complied with § 4 by staying proceedings so that defendant could move Arizona court to compel arbitration there); *Lawn v. Franklin,* 328 F.Supp. 791, 793 (S.D.N.Y.1971) (judicial control of proceedings should emanate from forum district); *Netherlands Curacao Co., N.V., v. Kenton Corporation,* 366 F.Supp. 744, 745–46 (S.D.N.Y.1973) (defendant cannot move in one district to compel arbitration in another).

■ Acknowledging that a district court cannot compel arbitration in another district, or in its own district in the face of an adverse forum selection clause, Merrill Lynch attempts to distinguish these cases on the grounds that the requested relief in the instant case was distinct from the motion to compel denied by the district judge. We view this as a distinction without a difference. Merrill Lynch filed a § 4 motion to compel arbitration in the Northern District of Illinois in an attempt to place substantive limitations on the Lauers' complaint. Whether this was to be achieved by actually compelling the arbitration in Illinois, or by relying on our precedent to create a Seventh Circuit-style arbitration in Florida, is immaterial. Merrill Lynch cannot rely on semantics by framing the request as one for injunctive relief to evade the general commands of § 4. Allowing an "injunction" to achieve the same effect as a properly filed motion to compel—the reviewing of the arbitrability of the complaint by the district court—would frustrate § 4's clearly stated commands.[9]

---

**9.** District courts, it is true, may order injunctive relief in cases where they are precluded from compelling arbitration, where injunctive relief preserves the status quo pending arbitration. See *Bosworth v. Ehrenreich,* 823 F.Supp. 1175 (D.N.J.1993). In *Bosworth,* the court refused to rule on defendant's § 4 motion to compel arbitration because the forum selection clause specified New York. *Id.* at 1178. Concerned about the potential for "irreparable harm to the corporation" whose fate was at issue, the New Jersey court ordered injunctive relief to stabilize the corporation; however, the court took no action

with respect to the pending arbitration. Merrill Lynch has pointed to no cases in which a district court from outside the forum has ordered injunctive relief affecting or regarding the arbitration proceeding itself. But cf. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock,* 822 F.Supp. 125 (S.D.N.Y.1993) (New York court ruled on Merrill Lynch's motion to stay Denver arbitration without addressing question of whether FAA permitted this); *Weatherly Cellaphonics Partners v. Hueber,* 726 F.Supp. 319 (D.D.C.1989) (court suggested in dictum that a non-forum court might be able to decide arbitrability questions).

The prohibition on extrinsic orders affecting arbitration thus is clear both from the language of § 4 itself, prescribing a geographic nexus between the arbitration and the court issuing an order to compel, and the case law which has interpreted this as a directive to courts to abstain from controlling intervention in arbitration proceedings outside their district. The legislative history of the FAA, albeit sketchy and incomplete, lends additional credence to this view. Describing the § 4 proviso that requires the hearings and the petition to issue from the same district, the Senate Committee on the Judiciary indicated that the statute was intended to require a party seeking to compel arbitration to apply to the proper court. S.Rep. No. 536, 68th Cong., 1st Sess. 3 (1924), cited in *E.C. Ernst, Inc. v. Potlatch Corp.*, 462 F.Supp. 694 (S.D.N.Y.1978). Section 4 is aimed at streamlining the path toward arbitration and preventing scattershot attacks in various judicial fora. Its application in the instant case is only too clear.

Viewing § 4 in this way, as a prescription for judicial economy that entails channeling prearbitration litigation into the appropriate forum, is consistent with the previous decisions of this Circuit holding that the venue provisions of §§ 9 and 10 of the FAA are permissive rather than mandatory. See *NII Metals Services, Inc. v. ICM Steel Corporation*, 514 F.Supp. 164, 166 (N.D.Ill.1981) (treating § 9 as permissive and hence confirming an award made in another district); *In re VMS Securities Litigation*, 21 F.3d 139, 142–44 (7th Cir.1994) (relying on *NII Metals* and extending it to find that § 10 was permissive). Merrill Lynch argues that these cases are dispositive of the issue before us, and that if we read §§ 9 and 10 as permissive we must do the same with § 4. Initially, we note that §§ 9 and 10 are couched in permissive language: § 9 states that application for confirmation "*may* be

made to the United States court in and for the district within which such award was made," 9 U.S.C. § 9; and § 10 states that "the United States court in and for the district wherein the award was made *may* make an order vacating the award upon ... application," 9 U.S.C. § 10. In contrast, § 4 is mandatory in its terms, directing that "the hearing and proceedings ... *shall* be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. The textual difference alone suggests that § 4 need not be read in lockstep with §§ 9 and 10.

Moreover, underlying both *NII Metals* and *VMS Securities* was the concern that it would be "wasteful" to read §§ 9 and 10 as mandatory. In *NII Metals*, for example, the plaintiff brought a breach of contract action in the Northern District of Illinois; the court stayed the action until arbitration proceeded in New York pursuant to the arbitration agreement. NII Metals subsequently moved to confirm the arbitration award in the Northern District. 514 F.Supp. at 165. The district judge in *NII Metals* held that the court, which already had jurisdiction of the parties from the prearbitration litigation, could vacate its previous stay in order to confirm the award. Otherwise, the "stay" would be· a mere nullity and confirmation would require additional proceedings. *Id.* at 166. Interpreting § 9 as permissive and thus allowing the Northern District court to confirm the award, the judge concluded, was "consistent with principles of judicial economy." *Id.*[10]

We agree. And by the same token, interpreting § 4 as mandatory with respect both to compelling arbitration and to reviewing the arbitrability of claims is equally consistent with principles of judicial economy. Post-arbitration litigation does not contemplate further arbitration; it is merely concerned with the fate of the previous proceed-

---

**10.** Our reading of § 4 is also consistent with the Supreme Court's decision in *Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which implied that state courts could compel arbitration under § 4. The Court was prompted to this conclusion by efficiency concerns. *Id.* at 27, 103 S.Ct. at 943 (noting that forcing party to obtain stay from state court but go to federal court to compel arbitration would be "a pointless and wasteful burden on the supposedly summary and speedy proceedings prescribed by the Arbitration Act."). In the instant case, these same efficiency concerns counsel a strict reading of § 4.

ing. The location of the now-completed arbitration is immaterial, and there are few benefits to be gained from confining further action to the same jurisdiction. In postarbitration litigation as contemplated in §§ 9 and 10, "the further proceedings will be in court in the same jurisdiction where the action to set aside the agreement is lodged. Thus the reasons which favor restricting the petition to compel to the arbitration district do not apply to an action to set aside [or to confirm]." *In re Frigitemp Corp.*, 8 B.R. 284, 290 (S.D.N.Y.1981).

In contrast, prearbitration litigation is intended to lead directly to, and to focus on, the future arbitration proceeding. It is a path that should narrow, not widen, as the arbitration draws nearer. A light tread on that path shows greatest respect for the laudable principles of judicial economy, and for the commands of § 4.

The facts of this case offer a textbook demonstration of the inefficiencies and potential inequities to be achieved if the dictates of § 4 are ignored. Merrill Lynch agreed to arbitration in Florida. The parties began preparations for that proceeding. Merrill Lynch then filed the § 4 petition below, followed closely by the filing of the Lauers' § 4 petition in the Northern District of Florida. The result: two ongoing federal court proceedings, both dealing with the pending arbitration. The Florida district court plainly has the authority under § 4 to hear both the Lauers' claim and any defenses or counterclaims Merrill Lynch might choose to raise. Intervention from the Northern District of Illinois court simply adds another layer, when dismissal of this action to allow for a judicial determination of arbitrability in Florida district court—the course proposed in our opinion in *Snyder*—would have avoided parallel proceedings and promoted the conserva-

tion of judicial resources. Intervention from the Northern District of Illinois also raises the disturbing specter of forum-shopping, which can hardly be deemed either an efficient or a desirable result: it undermines the certainty and predictability parties seek when entering written arbitration agreements. Our ruling does not leave Merrill Lynch without an outlet to challenge what they contend are improper attempts by the Lauers to arbitrate nonarbitrable disputes; it merely leaves the decision on these challenges to the district court in Florida, where the Lauers' § 4 motion to compel has been stayed while this action proceeded.

One additional argument, regarding the arbitration agreement's forum selection clause and the decision below, requires comment. Merrill Lynch points out that the forum selection clause did not actually specify Florida as the hearing site; it merely offered the Lauers a choice of arbitrators who would then select the site.[11] The Lauers chose the NASD; the NASD chose Tampa. District Judge Shadur concluded that this forum selection prevented him from compelling arbitration in Illinois.[12] We agree with his conclusion. Not only had the arbitration site been selected, but five months of prehearing activities, including discovery and the exchange of various motions, had taken place, strongly suggesting that both parties found the NASD's selection of a forum to be binding on them. This is not a situation where a party is contesting the validity of the forum selection clause itself, or the efficacy of its operation. Merrill Lynch did not "attempt to make a showing that would warrant setting aside the forum selection clause," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 623, 105 S.Ct. 3346, 3357, 87 L.Ed.2d 444 (1985), and our opinion rests on a consensus that the district court correctly applied that clause. The dis-

---

**11.** According to Section 26 of the NASD Code, "[t]he time and place of the initial hearing shall be determined by the Director of Arbitration and each hearing thereafter by the arbitrators" (Def.Br. at 9).

**12.** The judge stated his reasoning as follows: I would have read that, and I think it's fair to read that, as saying it's the NASD who decides what's meant by "before the NASD." So it seems to me that provision does carry with it

the corollary that it's the NASD's decision, when it's made, that controls. And that then is I think a fair application in the one place in which Lauers are right about what *Snyder* holds—and that is that this Court is not in a position to rule on the Merrill Lynch request for arbitration here.

Transcript of Proceedings of May 3, 1994 (reprinted in Def.Br.App.).

trict judge thus properly refused to compel arbitration outside of Florida; but the court should not have ordered "other relief" under a § 4 motion to compel that in effect transformed the arbitration into one adhering to Seventh Circuit precedent over Eleventh Circuit case law.

## CONCLUSION

Because the district court exceeded its authority in granting the relief requested by Merrill Lynch, we vacate the district court's order and remand for dismissal of this action.