**Edward E. BAO, Plaintiff,**

v.

**GRUNTAL & CO., INCORPORATED, Defendant.**

**Civil Action No. 96–2045(MLP).**

United States District Court, D. New Jersey.

Aug. 19, 1996.

Order Certifying Decision for Appeal Oct. 2, 1996.

Greg A. Danilow, Weil, Gotshal & Manges L.L.P., New York City, Roger B. Kaplan,

Wilentz Goldman & Spitzer, Woodbridge, NJ, for plaintiff.

Gregg L. Weiner, Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant.

## MEMORANDUM AND ORDER

PARELL, District Judge.

This matter comes before the Court on (1) application of plaintiff Edward E. Bao ("Bao") for a preliminary injunction; and (2) motion of defendant Gruntal & Co., Inc. ("Gruntal") to dismiss or, in the alternative, to transfer this action to the United States District Court for the Southern District of New York. For the following reasons, defendant's motion to transfer is granted and plaintiff's application for a preliminary injunction is denied without prejudice to the right of plaintiff to renew said application in the transferee district.

### BACKGROUND

Plaintiff, a New Jersey resident, commenced this diversity action on May 3, 1996, against defendant Gruntal, a Delaware corporation with its principal place of business in New York City. (Compl. ¶¶ 1, 2.) Gruntal is "a full-service brokerage firm" registered with the Securities Exchange Commission and is a member of several exchanges, including the New York Stock Exchange ("NYSE") and the American Stock Exchange ("AMEX"). (Compl. ¶ 2.) From late 1983 until December of 1994, Bao was a Director and Executive Vice President for Operations and Administration of defendant Gruntal. (*Id.* ¶ 1; Stipulation dated June 12, 1996 [hereinafter "6/12/96 Stipulation"], ¶ 2.) By virtue of his employment with Gruntal, Bao was an associate member of the AMEX from May 24, 1989, until December 16, 1994. (Stipulation dated June 17, 1996 [hereinafter "6/17/96 Stipulation"], ¶ 1.) Thereafter, Bao owned a seat on the AMEX from August 27, 1993, until April 12, 1995. (*Id.*) Additionally, Bao was a member of the NYSE from October 24, 1985, until June 29, 1995, as a

result of his employment with first another company and then with Gruntal. (*Id.* ¶ 2.)

In order to become a member of both the NYSE and the AMEX, Bao agreed to abide by the rules and constitution of each Exchange. (*See* Attachment to 6/17/96 Stipulation; Affidavit of Michael A. Ungar [hereinafter "Ungar Aff."], Ex. 3.) Both the NYSE's and the AMEX's constitutions provide that disputes between members shall be submitted to arbitration. (6/12/96 Stipulation, Ex. B: NYSE Constitution art. XI, § 1; 6/12/96 Stipulation, Ex. D: AMEX Constitution art. VIII, § 1.) Further, NYSE Rule 603 and AMEX Rule 605(a) both provide that "[n]o dispute, claim or controversy shall be eligible for submission to arbitration ... where six (6) years shall have elapsed from *the occurrence or event giving rise to the act or the dispute, claim or controversy.*" (6/12/96 Stipulation, Ex. F: NYSE Rule 603; 6/12/96 Stipulation, Ex. G: AMEX Rule 605(a).)

In November 1994, Gruntal discovered an embezzlement from the company and commenced an internal investigation. (Ungar Aff. ¶ 4.) In the course of that investigation, Gruntal terminated plaintiff. (*Id.*) The investigation revealed that Bao had negotiated relationships with his son, Juan Bao, and the children of the former Chief Executive Officer of Gruntal, Andrew and Mitchell Silverman; both of these relationships allegedly disadvantaged Gruntal. (*Id.* ¶ 5.)

By separate Statements of Claim dated December 28, 1995, Gruntal filed two arbitrations against plaintiff, one before the NYSE and one before the AMEX. (Affidavit of Greg A. Danilow dated June 6, 1996 [hereinafter "Danilow Aff."], ¶ 6; Danilow Aff., Exs. A, B.) Subsequently, on May 8, 1996, Gruntal filed First Amended Statements of Claim as of right. (Danilow Aff. ¶ 6; Exs. E, F.) Gruntal claims in both arbitrations that Bao committed fraud and breached his fiduciary duty to Gruntal. (*See* Ungar Aff. ¶¶ 8–14; Danilow Aff., Exs. E, F.) [1]

---

**1.** Gruntal has asserted claims against several other parties in the NYSE and the AMEX arbitrations. The Statement of Claim filed with the NYSE names Silverman Brothers, Inc., Andrew

Silverman, and Mitchell Silverman as respondents. (Danilow Aff., Ex. E.) Similarly, the Statement of Claim filed with the AMEX names JAB Associates, Inc. and Juan A. Bao as respon-

Bao commenced this action on May 3, 1996, the date on which his answers were due in both the NYSE and AMEX arbitrations. Plaintiff requested that both arbitrations be stayed pending resolution of this federal action. (Danilow Aff., Ex. D.) The NYSE Senior Arbitration Counsel had informed the parties by letter dated April 25, 1996, that an arbitration hearing was scheduled for July 16 and 17, 1996, in New York, New York.[2] (Danilow Aff., Ex. I.) The AMEX responded to Bao's request for a stay by letter dated May 23, 1996, stating that "[t]here are allegations raised in the Claim that fall within the six-year period" and therefore the AMEX hearing would proceed absent a final court-ordered stay. (Danilow Aff., Ex. H.) The parties were advised that they were free to raise the timeliness issue again with the arbitrators. Bao was instructed to file his answer in the AMEX arbitration within ten days of receipt of the letter or be in default. (*Id.*) By letter dated June 19, 1996, the NYSE likewise advised the parties that the Director of Arbitration "ruled that any of Claimant's claims over six years old at the time Gruntal & Company's statement of claim in this matter was filed will be ineligible for arbitration and will not be considered by the Arbitrators assigned to this case." (Letter from NYSE Senior Arbitration Counsel dated June 19, 1996.)

In the instant action, plaintiff claims in essence that because Gruntal's claims against Bao arise from events that occurred more than six years before the arbitrations were commenced, those arbitrations as against him are barred by the six-year limitation on arbitration contained in the respective arbitration rules of each Exchange. Plaintiff seeks an injunction against Gruntal to prevent Gruntal from proceeding with arbitra-

tion of its claims against Bao "to the extent such claims are barred under the Arbitration Rules" of the AMEX and NYSE.[3] (Compl. at 6–7). Issue was joined with the filing of Gruntal's Answer on May 28, 1996, which included an affirmative defense that the issue of the timeliness of the claims in the AMEX and NYSE arbitrations should be decided by the arbitrators. (Answer at 4.)

On June 7, 1996, the Court heard oral argument on Bao's application for an order temporarily restraining Gruntal from proceeding with the arbitrations before the NYSE and the AMEX. The Court denied the application and ordered Gruntal to show cause on June 18, 1996, why a preliminary injunction should not issue.

In his initial brief in support of his application for a temporary restraining order, Bao argued that in the Third Circuit, the district court, and not the arbitrators, must decide whether claims are barred under the six-year rule. (Pl.'s Br. in Support of Application for Temporary Restraining Order [hereinafter "Pl.'s First Br."] at 2, 9–12 (citing *Paine-Webber Inc. v. Hartmann,* 921 F.2d 507 (3d Cir.1990); *PaineWebber Inc. v. Hofmann,* 984 F.2d 1372 (3d Cir.1993).) Bao argued that it is indisputable in this case that certain of Gruntal's claims arose from occurrences and events that took place more than six years before the filing of the NYSE and AMEX arbitrations. (*Id.* at 12.)

In opposition to Bao's application for a TRO, Gruntal argued that as a member of both the NYSE and the AMEX, Bao agreed to submit all disputes to arbitration. (Def.'s Br. in Opp'n to Pl.'s Application for a Temporary Restraining Order [hereinafter "Def.'s First Br."] at 5.) Gruntal maintained that NYSE Rule 621 and AMEX Rule 612(b)

---

dents. (Danilow Aff., Ex. F.) None of these persons or entities are parties to this action.

**2.** The Court was later advised by the parties that the NYSE arbitration was adjourned until September, 1996.

**3.** Bao asserts that "some, if not all," of Gruntal's claims against him in the NYSE arbitration are barred by the six-year rule because the agreement with the Silvermans was entered into before December 28, 1988. (Pl.'s Br. in Support of Application for Temporary Restraining Order at

6.) Similarly, plaintiff contends that most of Gruntal's claims against him in the AMEX arbitration are barred because he entered into the agreement with his son before April 1989. (*Id.* at 7.) Bao does not contest, however, the timeliness of Gruntal's claims against him in the AMEX arbitration relating to the Chicago Board Option Exchange. (*Id.* at 7 n. 3.) Gruntal, by contrast, argues that "at most, only a small piece of each arbitration may be time barred." (Def.'s Br. in Opp'n to Pl.'s Application for a Temporary Restraining Order at 11.)

evidence a "clear and unmistakable" intent to submit issues of arbitrability to the arbitrators. (*Id.* at 6.) These Rules each provide that "[t]he arbitrator(s) shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s)." (6/12/96 Stipulation, Ex. F: NYSE Rule 621; 6/12/96 Stipulation, Ex. G: AMEX Rule 612(b).)

In a later submission invited by the Court, Gruntal reiterated that NYSE Rule 621 and AMEX Rule 612(b) "are a clear expression of the parties' intent to submit issues of timeliness under [the six-year rules] to the arbitrator." (Def.'s Br. in Opp'n to Pl.'s Application for a Prelim. Inj. [hereinafter "Def.'s Second Br."] at 11.) Defendant claimed that there is "clear and unmistakable" evidence of the parties' intent to have the arbitrator determine issues of arbitrability, thus meeting the standard enunciated by the Supreme Court in *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). As support for this contention, Gruntal directed the Court's attention to *Paine-Webber Inc. v. Bybyk,* 81 F.3d 1193 (2d Cir. 1996), and *FSC Securities Corp. v. Freel,* 14 F.3d 1310 (8th Cir.1994). (*See* Def.'s Second Br. at 12.) In each of those cases, the appellate court found that NASD § 35, which is identical to NYSE Rule 621 and AMEX Rule 612(b), is a clear and unmistakable expression of an agreement to leave the question of arbitrability to the arbitrators. Gruntal sought to distinguish cases to the contrary by highlighting that Bao was a member of the Exchanges rather than a customer. (*Id.* at 12–13.)

Bao responded by arguing that *First Options* in fact reaffirmed the principles enunciated by the Court of Appeals for the Third Circuit in *Hofmann* and *Hartmann.* (Pl.'s Reply Br. at 2–4.) Plaintiff further asserted that the "bulk" of Gruntal's allegations against him may not be submitted to arbitration under the Exchanges' six-year rules. (*Id.* at 7–8.)

While plaintiff's application for a preliminary injunction was under consideration, Gruntal filed a motion to dismiss the complaint or, in the alternative, transfer this action to the United States District Court for the Southern District of New York. In support of its motion, Gruntal notes that the parties have been advised that both the NYSE and the AMEX arbitration hearings will be held in New York. (Def.'s Br. in Support of Mot. to Dismiss [hereinafter "Def.'s Dismissal Br."] at 2 & n. 1; Affidavit of Janice M. Stroughter dated July 29, 1996, ¶ 3.) Defendant argues that because the NYSE and AMEX arbitrations were filed in New York and scheduled to be heard in New York, only a federal court in New York can entertain Bao's present application for injunctive relief. (Def.'s Dismissal Br. at 4.) Gruntal relies upon Section 4 of the Federal Arbitration Act and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323 (7th Cir.1995), in which the Court of Appeals for the Seventh Circuit held that § 4 "requires a geographic link between the site of the arbitration and the district which, by compelling arbitration *or directing its scope,* exercises preliminary control." (Def.'s Dismissal Br. at 4–5.)

Bao emphasizes the language in § 4 that provides that a party may "petition *any* United States district court, which, save for such agreement, would have jurisdiction under Title 28, in a civil action." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss at 2.) Plaintiff contends that the decision of the Court of Appeals for the Seventh Circuit in *Lauer* is inconsistent with the plain language of § 4, and therefore should not be followed by this Court. (*Id.* at 4.)

***DISCUSSION***

In *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 510 (3d Cir.1990), the Court of Appeals for the Third Circuit considered whether NYSE Rule 603 is a substantive bar to arbitration or a procedural limitation subject to the arbitrator's jurisdiction. Concluding that the claims at issue were outside the jurisdiction of the arbitrators, the district court issued a preliminary injunction staying the arbitration. *Id.* at 509. On appeal, the court noted that "the plain language of Rule 603 states that after six years from the events giving rise to a dispute have elapsed, the dispute 'shall [not] be eligible for submission to arbitration.'" *Id.* at 513 (alteration in

original) (quoting NYSE Rule 603). The court of appeals thus affirmed the district court's conclusion that "the parties intended to bar from arbitration disputes raised more than six years after the events giving rise to them." *Id.* The court reasoned that because "'the question of arbitrability ... is undeniably an issue for judicial determination,'" a party cannot be required to arbitrate the threshold issue of whether the underlying dispute is arbitrable. *Id.* at 514 (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)).

Three years later, in *PaineWebber Inc. v. Hofmann*, 984 F.2d 1372 (3d Cir.1993), the Court of Appeals for the Third Circuit reaffirmed its holding that NASD Code § 15 (which is, in all relevant parts, identical to NYSE Rule 603 and AMEX Rule 605(a)) "can reasonably be read in only one way—as a substantive limit on the claims that the parties have contracted to submit to arbitration." *Id.* at 1379 (citing *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 513 (7th Cir. 1992)). The court noted that although parties may agree to submit questions of arbitrability to the arbitrators, the contractual language doing so must be "clear and unmistakable." *Id.* at 1379 n. 4 (citing *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418). The court concluded that the language of § 15 was not sufficiently clear and unmistakable to constitute a submission of arbitrability to the arbitrators. *Id.*

Other circuits have reached the opposite conclusion when faced with the question of who decides arbitrability under the six-year rule. Significantly, the Court of Appeals for the Second Circuit has determined that the arbitrators have jurisdiction to determine those issues of arbitrability. In *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir.1996), the court addressed NASD Code § 35, which, like NYSE Rule 621 and AMEX Rule 612(b), provides: "The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s)." The Court of Appeals for the Second

Circuit concluded that "[n]othing in the NASD Code removes section 15 [the six-year rule] from the ambit of section 35." *Id.* The Second Circuit thus held:

> [T]he parties' adoption of this provision [section 35] is a "clear and unmistakable" expression of their intent to leave the question of arbitrability to the arbitrators. In no uncertain terms, section 35 commits interpretation of all provisions of the NASD Code to the arbitrators. Reading the NASD Code ... as a whole, we see no reason not to apply section 35 to the arbitrators' decision regarding application of section 15.

*Id.* (alterations in original) (quoting *FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312–13 (8th Cir.1994)). The court emphasized that the "language of the [NASD] Code itself commits all issues, including issues of arbitrability and timeliness, to the arbitrators." *Id.*

Although the parties have not identified it as such, their papers, as well as the Court's own research, reveal a distinct split among the Circuits with regard to the issue of who decides arbitrability under the six-year rule. The Courts of Appeals for the Sixth, Seventh, Tenth, and Eleventh Circuits appear to have aligned themselves with the Third Circuit in holding that courts are to determine whether a claim is time-barred under § 15 of the NASD Code or its parallel rules in the other Exchanges. *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 78 F.3d 474, 476 & n. 3 (10th Cir.1996). By contrast, the Second, Fifth, and Eighth Circuits have held that arbitrators should decide this issue of arbitrability. *Id.* at 477 (citing *Freel*, 14 F.3d at 1312–13; *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753 (5th Cir. 1995)).

Because this Court is bound by the decisions of the Court of Appeals for the Third Circuit, it appears that this Court would be required to determine the timeliness of Gruntal's claims against Bao under the six-year rules of the NYSE and the AMEX. Because the Court finds that it is without authority to direct the scope of arbitrations pending in New York, however, the Court

declines to enter the requested injunctive relief.

■ As the Court of Appeals for the Third Circuit has recognized, § 4 of the Federal Arbitration Act ("FAA") "enables a litigant to invoke the authority of a federal district court in order to force a reluctant party to arbitrate a dispute." *Hartmann*, 921 F.2d at 510. The Act applies even where jurisdiction is based on diversity of citizenship. *Id.* at 510 & n. 3 (citations omitted). Section 4 provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. This provision explicitly confers a federal remedy where one party refuses to arbitrate a dispute. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir.1995). Moreover, courts have interpreted § 4 to extend to situations in which, as plaintiff contends in this case, the other party allegedly fails to arbitrate in accordance with the terms of the arbitration agreement. *Id.*

■ The first sentence of § 4 does not prescribe a venue; rather, it states that an aggrieved party "may petition any United States District Court." *Id.* (citing 9 U.S.C. § 4). As the Court of Appeals for the Seventh Circuit noted, however, this broad authority "quickly narrows." *Id.* The provision later mandates that "[t]he hearings and proceedings ... shall be within the district in which the petition for an order directing such arbitration is filed." *Id.* Analyzing this language, the Seventh Circuit concluded that the directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or *directing its scope*, exercises preliminary control.... [T]he statute limits the fora in which § 4 motions can be brought. *Id.* (citing *Lawn v. Franklin*, 328 F.Supp. 791, 793 (S.D.N.Y.1971)).

The Seventh Circuit's decision in *Lauer* does not stand alone. "Numerous other cases have considered the plain language of § 4 and concluded that a district court lacks the authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration." *Id.* at 328 (citing *Alpert v. Alphagraphics Franchising, Inc.*, 731 F.Supp. 685, 689 (D.N.J.1990); *Lawn*, 328 F.Supp. at 793; *Netherlands Curacao Co., N.V. v. Kenton Corp.*, 366 F.Supp. 744, 745–46 (S.D.N.Y.1973)).

In *Bosworth v. Ehrenreich*, 823 F.Supp. 1175, 1177 (D.N.J.1993), for example, the shareholder-plaintiff filed suit in the District of New Jersey to resolve a conflict among a corporation's shareholders. One of the defendants filed a motion to compel arbitration under the FAA and to stay the federal court action pending in New Jersey. *Id.* at 1178. The shareholders' agreement provided that all disputes arising thereunder would be submitted to arbitration in New York. *Id.* at 1179. Noting that "[a]s a general rule, the place where the petition is filed determines the locale for arbitration," the district court held:

> This Court sits in New Jersey and cannot compel arbitration in New York.... Other courts have expressed concern that a district court by ignoring an arbitration clause and compelling arbitration in its own district would encourage forum shopping by plaintiffs dissatisfied with the forum selection clause. Therefore, the Court may not compel arbitration in New York and will not, even if it could, compel arbitration in New Jersey. The Court, therefore, will transfer venue to the Southern District of New York under 28 U.S.C. § 1406(a)....

*Id.* at 1180 (citing *Alpert*, 731 F.Supp. at 689).

Similarly, this Court sits in New Jersey and can neither compel arbitration nor direct its scope in New York. Both the NYSE and the AMEX arbitrations were filed in New York and are scheduled to be heard in New

York. In these circumstances, only a federal court sitting in New York may entertain Bao's application for injunctive relief. Given the split among the Circuits with respect to the issue of who decides arbitrability under the six-year rule, allowing this case to proceed in the District of New Jersey would encourage the forum shopping that § 4 was designed to prevent. Further, this Court will not order a Third Circuit-style arbitration to proceed in the Second Circuit. *See Lauer*, 49 F.3d at 328 ("Merrill Lynch filed a § 4 motion to compel arbitration in the Northern District of Illinois in an attempt to place substantive limitations on the Lauers' complaint. Whether this was to be achieved by actually compelling the arbitration in Illinois, or by relying on our precedent to create a Seventh Circuit-style arbitration in Florida, is immaterial."). Accordingly, the Court will transfer venue to the Southern District of New York under 28 U.S.C. § 1406(a).

\* \* \* \* \* \*

■ Plaintiff has requested that the transfer of this action be stayed so that plaintiff may appeal the instant decision to the Court of Appeals for the Third Circuit. Plaintiff has also requested that such order include a stay of the pending arbitrations. (Letter from Greg A. Danilow, Esq. dated Aug. 10, 1996.) This Court will grant the former request, so that plaintiff's appeal pursuant to 28 U.S.C. § 1292(a)(1) may be taken within the Third Circuit, and before the transfer order takes effect. This Court will not grant the latter request, which would if granted constitute the very relief sought and refused in plaintiff's application for a preliminary injunction, and for which plaintiff has indicated he will seek an expedited appeal. (*Id.*) Inasmuch as this Memorandum and Order should be appealable as of right under 28 U.S.C. § 1292(a)(1) [refusal of preliminary injunction], this Court does not at this time set forth a statement pursuant to 28 U.S.C. § 1292(b) [controlling question of law]. However, either party may request such a statement if deemed necessary or appropriate.

IT IS, therefore, on this 19th day of August, 1996, **ORDERED** that this action shall be **TRANSFERRED** to the United States District Court for the Southern District of New York, but that the transfer is hereby stayed until further order of this Court, pending plaintiff's anticipated appeal to the Court of Appeals for the Third Circuit; and

IT IS FURTHER ORDERED that the application of plaintiff Edward E. Bao for preliminary injunctive relief be and hereby is **DENIED WITHOUT PREJUDICE** to the right of plaintiff to renew said application in the transferee district.

SUPPLEMENTAL ORDER CERTIFYING INTERLOCUTORY ORDER ENTERED AUGUST 19, 1996 FOR PURPOSE OF APPEAL UNDER 28 U.S.C. § 1292(b)

Upon further review and consideration of the appealability of the Memorandum and Order entered herein on August 19, 1996, as requested by counsel for plaintiff and defendant in their letters to the Court dated September 24 and 26, 1996, respectively; and it appearing that said Order is not appealable as of right because of the provisions of 9 U.S.C. § 16(b)(4) ("except as otherwise provided in Section 1292(b) of Title 28, an appeal may not be taken from an interlocutory order— ... (4) refusing to enjoin an arbitration that is subject to this title"); and this Court being of the view that the issues addressed in said Memorandum and Order do involve a controlling question of law as to which there may be substantial ground for difference of opinion (and which have not to date been presented for review in the Court of Appeals for the Third Circuit), and that an immediate appeal from said Order may materially advance the ultimate termination of this litigation (and/or that an immediate appeal from said Order will address a recurrent issue presented to the District Courts in this Circuit on similar applications for preliminary injunction, which issue is not otherwise likely to reach the Court of Appeals expeditiously due to the enactment in 1988 of said Section 16 of the Arbitration Act, 9 U.S.C. § 16); and good cause appearing,

IT IS on this 2nd day of October, 1996, **ORDERED** that the Memorandum and Order entered herein on August 19, 1996, is hereby supplemented to identify the following question of law for the consideration, in

its discretion, of the Court of Appeals for the Third Circuit under 28 U.S.C. § 1292(b):

Where a party to an arbitration agreement files an independent action in a District Court under § 4 of the Arbitration Act, 9 U.S.C. § 4, seeking to enjoin the other party from proceeding in an arbitration pending in a location outside the Circuit of the forum district; and

where plaintiff in the District Court action seeks a declaration of the non-arbitrability of certain claims in the pending arbitration, asserting that such claims are barred by a 6–year limitation contained in the arbitration agreement [NYSE Rule 603 and/or AMEX Rule 605(a) ]; and

where the Courts of Appeals for the forum district and for the district in which the arbitration is pending are currently split on the issue of whether the determination of arbitrability under such 6–year rule is for the District Court or for the arbitrator under the arbitration agreement [NYSE Rule 621 and/or AMEX Rule 612(b) ],

is it error for the forum District Court to deny without prejudice the application for preliminary injunction (thus declining to decide said issue of arbitrability), and to transfer the action to the District Court in the location where the arbitration is pending?

**IT IS FURTHER ORDERED** that all other provisions of said Order entered August 19, 1996 shall remain in full force and effect until further order of this Court.