**HASCO, INC., et al., Plaintiffs,**

v.

**SCHUYLER, ROCHE & ZWIRNER, et al., Defendants.**

Civ. A. No. 2:97–0625.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 21, 1997.

---

Robert A. Goldberg and Blake O. Brewer, King, Allen & Guthrie, Charleston, WV, for Plaintiffs.

Daniel R. Schuda, Steptoe & Johnson, Charleston, WV, for Defendants.

*MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending are (1) Defendants' motion to stay, or in the alternative, to dismiss; and (2) Plaintiffs' motion to prohibit and enjoin Defendants from proceeding with their arbitration petition in the Northern District of Illinois. The Court **DENIES** both motions.

## I. FACTUAL BACKGROUND

The parties' relationship is lengthy and complicated. This summary sets forth only the significant events and parties.

Defendant Schuyler, Roche & Zwirner (SRZ) is an Illinois law firm with its principal place of business in Chicago, Illinois. Defendants Michael B. Roche and L. Andrew Brehm are shareholders and members in SRZ. Plaintiff Hasco, Incorporated is a West Virginia corporation. Plaintiff Harold Sneddon, though apparently not formally connected to HASCO, plays a paramount role in its operations. Sneddon's wife Meredith is the nominal president of Hasco and its sole shareholder. Plaintiffs do not contest vigorously that Hasco is Harold Sneddon's alter ego.

In August 1994, a dispute developed between Arauca Trading Limited Partnership (ATLP), a Chicago securities trading firm, and its clearing firm, First Options of Chicago, Incorporated (FOC). Harold Sneddon was and is a stockholder of Arauca General, Incorporated (AGI) the sole general partner of ATLP. ATLP suffered heavy losses in what Plaintiffs claim was an "arbitrage scheme."[1] ATLP alleged the losses were FOC's fault and that FOC harmed ATLP by liquidating ATLP's account with FOC in August 1994. Several individuals and entities associated with ATLP, including Harold Sneddon, loaned significant sums of cash to ATLP, which were lost.

The dispute touched off a litigation firestorm between ATLP and FOC, including proceedings before at least two arbitral bodies and two civil courts. ATLP formally, and AGI, Hasco and other ATLP lenders infor-

mally, retained the SRZ law firm to seek recompense from FOC. In one case stemming from the dispute, SRZ represented Hasco and other aggrieved parties against FOC directly in West Virginia in what is referred to as the *New Allegheny* action. Each represented party executed a retention letter which provided, in part, as follows:

> 7. *Disputes.* It is SRZ's policy to discuss and to attempt to resolve fairly any concerns its clients may have concerning the billings provided to them, or regarding any other aspect of the attorney-client relationship. However, if a dispute should develop which is not promptly resolved in a mutually-satisfactory manner, any such dispute will be subject to arbitration in Chicago, Illinois pursuant to the Commercial Arbitration Rules of the American Arbitration Association then in effect.

Ex. A, Defs.' motion for stay, or in the alternative, to dismiss (Defs.' motion). There is no signature date next to Mrs. Sneddon's signature for Hasco, but the letter is dated November 23, 1994.

The disputes between FOC, ATLP, Hasco and other financial backers were settled in June 1995. FOC agreed to pay a substantial sum to the aggrieved parties, including Hasco. When the settlement was disbursed by SRZ, however, Hasco believed it was entitled to a larger share of the funds. This blossomed into another flurry of lawsuits.

Plaintiffs sued ATLP, AGI and other individuals in the Circuit Court of Kanawha County in February 1996 to recover monies owed. The action is pending. SRZ then filed actions against Plaintiffs on behalf of ATLP and affiliated individuals. SRZ also filed its own action against Mr. Sneddon in the Circuit Court of Cook County, Illinois in which it attempted to recover attorney fees from Harold Sneddon personally in a matter involving a company known as APCO Limited Partnership (APCO), an entity formed after the collapse of ATLP.

Plaintiffs prevailed in certain court decisions arising out of the second dispute. For

---

**1.** The term "arbitrage" means "the often simultaneous purchase and sale of the same or equivalent security ... in order to profit from price discrepancies...." *Webster's Ninth New Collegiate Dictionary* 99 (9th ed.1983).

instance, the Cook County Circuit Court ruled on January 29, 1997 that Defendants engaged in a prohibited conflict of interest in representing ATLP and others against Plaintiffs. Further, on May 6, 1997, the Kanawha County Circuit Court enjoined ATLP and others from proceeding with the countersuits filed against Plaintiffs in Chicago.

During the parties' litigious sparring, Plaintiffs discovered the FOC settlement funds had been depleted substantially. They then commenced this action on June 12, 1997. After securing a stipulation from Plaintiffs extending the time for answering the complaint to July 18, Defendants petitioned to compel arbitration of the instant dispute on July 9 in the United States District Court for the Northern District of Illinois. Defendants then moved to stay or dismiss, which was met promptly with Plaintiffs' motion to prohibit and enjoin Defendants from proceeding with the Illinois action.

## II. DISCUSSION

### A. *Interpretation and Applicability of the Federal Arbitration Act (FAA)*

■ A significant consideration here is whether the FAA, with its traditionally broad policy favoring arbitration, controls or whether more restrictive, state-based substantive law obtains. Our Court of Appeals recently restated some well-settled considerations concerning the FAA's breadth:

> Whether a party has agreed to arbitrate an issue is a matter of contract interpreta-

tion: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Nevertheless, the Supreme Court has announced its "healthy regard for the federal policy favoring arbitration" and has explained that the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16 (West 1970 & Supp.1996), "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Thus, we may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 92 (4th Cir.1996) (citations omitted); *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 273–74 (4th Cir.1997).

■ The FAA applies if the parties' dispute pertains to "[a] written provision in ... a contract evidencing a transaction involving commerce." [2] 9 U.S.C. § 2. Plaintiffs assert the necessary interstate nexus is lacking.[3]

---

2. Section 2 provides in its entirety as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

3. Plaintiffs further assert the FAA is inapplicable because the retention letter was an employment contract. They claim the FAA excludes specifically such contracts from its ambit. Plaintiffs rely on *United Electrical, Radio & Machine Work-*

*ers v. Miller Metal Products, Inc.,* 215 F.2d 221 (4th Cir.1954). *Miller,* however, was drastically limited by a more recent decision in *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272 (4th Cir.1997), a case not relied upon by either party:

> The FAA exempts from its coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The circuit courts have uniformly reasoned that the strong federal policy in favor of arbitration requires a narrow reading of this section 1 exemption. Thus, those courts have limited the section 1 exemption to seamen, railroad workers, and other workers actually involved in the interstate transportation of goods. We agree with this uniform body of precedent. If Congress had wished to exempt all employees from the coverage of the FAA it could have said so. Instead it enumerated an exempt class of em-

■ Plaintiffs' argument falters, however, in light of the Supreme Court's recent decision in *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In *Dobson*, the Supreme Court stated: "[T]his Court has previously described the Act's reach expansively as *coinciding with that of the Commerce Clause.*" *Id.* at 274, 115 S.Ct. at 840 (emphasis added).

Given the multistate nature of the parties' relationship, including (1) SRZ's performance of legal services primarily in Chicago for the West Virginia Plaintiffs; (2) the interstate travel of SRZ attorneys to West Virginia for court appearances; and (3) the parties' interstate communications, the Court has little difficulty concluding the retention letter evidences a transaction involving commerce. The FAA thus controls.

### B. Power to Rule on Arbitrability

■ The parties' principal disagreement is whether this Court should rule on the question of arbitrability. Defendants rely on case law interpreting section four of the FAA. It provides, in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any United States district court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, *for an order directing that such arbitration proceed in the manner provided for in such agree-*

ment. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, *the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings. under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed ....*

9 U.S.C. § 4 (emphasis added).[4]

■ Defendants refer to cases supporting the proposition that only a court in the Northern District of Illinois can enter a valid and binding order compelling arbitration in Illinois because of the forum selection clause. Admittedly, nearly all of the cases cited by Defendants support the assertion. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir.1995); *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir.), *cert denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *Econo–Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir.1974); *Alpert v. Alphagraphics Franchising, Inc.*, 731 F.Supp. 685, 689 (D.N.J.1990); *Bosworth v. Ehrenreich*, 823 F.Supp. 1175, 1178 (D.N.J.1993). The Court would note, however, the rule is not free from controversy. *See, e.g., Snyder*, 736 F.2d at 420 (Bauer, J., dissenting in part).

ployees, which is limited to workers engaged in the shipment and transportation of goods. *Therefore. since O'Neil was not engaged in the interstate transportation of goods. she does not fall within the section 1 exclusion, and the FAA applies.*
*Id.* at 274 (emphasis added). Given *Miller's* limitation, Plaintiffs' argument fails.

4. Section 3 of the FAA provides:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agree-

ment, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
9 U.S.C. § 3. Plaintiffs suggest section 3, rather than section 4, is the applicable provision for compelling arbitration under these circumstances. The Court's research reveals Plaintiffs are correct. *See, e.g.*, David S. Schwartz, *Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration*, 1997 Wis. L.Rev. 33, 42 n. 20. Nonetheless, given the jurisdictional implications, the Court will analyze Defendants' section 4 argument.

Assuming the wisdom of the rule, and further assuming the Court lacks jurisdiction to *compel* arbitration, the cases do not support the proposition the Court lacks power to *determine* at least arbitrability ab initio. In fact, some of Defendants' own asserted authorities stand for that very proposition. *See Alphagraphics*, 731 F.Supp. at 687–88; *Bosworth*, 823 F.Supp. at 1179. The Court thus may determine arbitrability. If the matter is arbitrable, it will be transferred to the Northern District of Illinois. *See Bosworth*, 823 F.Supp. at 1184. If not arbitrable, the case will proceed here.

### C. *Arbitrability*

Plaintiffs raise a host of arguments in opposition to arbitrability. Several of their assertions appear meritorious. One narrow ground, however, resolves the matter.

 Our Court of Appeals has dealt comprehensively with the subject of waiver of the right to arbitration under the FAA:

Under the Federal Arbitration Act, "[a] litigant may waive its right to [arbitration] by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.". Because of the strong federal policy favoring arbitration, however, we will not lightly infer the circumstances constituting waiver. Our key inquiry is whether the party opposing the stay has suffered any actual prejudice. Although "mere delay, without more, will not suffice to constitute waiver," "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice[ ]". The party opposing the stay bears the heavy burden of proving waiver.

*American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir.1996); *see Fraser v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987)("[W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, *i.e.,* prejudiced."); *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir.1985); *In re Mercury Constr. Corp.*, 656 F.2d 933, 940 (4th Cir.1981), *aff'd sub nom. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330–31 (4th Cir.1971).

This circuit, like many sister circuits, thus requires a showing of prejudice to demonstrate waiver. But see *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir.1995)(Posner, C.J.)(finding prejudice unnecessary and stating "ours may be the minority position but it is supported by the principal treatise on arbitration. 2 Ian R. Macneil, Richard E. Speidel & Thomas J. Stipanowich, *Federal Arbitration Law: Agreements, Awards, and Remedies Under the Federal Arbitration Act* § 21.3.3 (1994)."). Nonetheless, our Court of Appeals has suggested an adversary's burdensome litigation activity may amount to prejudice sufficient to later block the adversary's attempt to compel arbitration. *Fraser*, 817 F.2d at 252 (stating "The discovery proceedings below prejudicially burdened Fraser to the extent that they related to arbitrable claims.").

 In April 1996, SRZ filed the civil action against Harold Sneddon for recovery of attorney fees arising out of the APCO matter. *Schuyler, Roche & Zwirner v. Sneddon*, No. 96–M–1–119948 (Cir. Ct. Cook Cty. Mun. Div.).[5] Plaintiffs note this action in

---

5. While Defendants do not make the argument, it is too late in the day for them to assert that, since this case involves Roche, Brehm and Harold Sneddon, not parties to the retention letter, in addition to SRZ and Hasco, the covenanting parties, the Chicago civil action would not operate as a waiver as to the former. Indeed, Defendants assert as follows in their brief:

Roche and Brehm, attorneys affiliated with the defendant law firm, SRZ, are sued in their capacity as agents of that firm. Any claim by

their waiver argument and Defendants do not challenge it. While the parties have provided little information on the pending case, the Court has obtained the civil action's docket sheet from the Clerk of the Circuit Court of Cook County. The eleven page summary reveals an astonishing amount of litigation activity on SRZ's part, including (1) the filing of and responding to motions, some of which appear to be dispositive in nature; (2) attendance at hearings; and (3) responding to discovery. The case also appears to have been set for trial on more than one occasion.

The Court is aware of the "healthy regard" for arbitration which reappears throughout relevant circuit and Supreme Court precedent. Nonetheless, the peculiar facts of this case counsel in favor of finding a waiver. First, although not particularly germane to the prejudice inquiry, SRZ is one of the oldest firms in Chicago, with an emphasis on securities and commodities regulation and litigation. One can thus presume the firm members appreciate the competing choices between litigation and arbitration. Indeed, one of the firm members named in this suit, Michael Roche, has arbitrated for the National Association of Securities Dealers for nearly a decade.

Second, the letter of retention was drafted by Roche and the arbitration provision is not buried within its contents. The document is but four pages long. Third, the arbitration clause, while drafted broadly to cover "any . . . aspect of the attorney-client relation-

ship[,]" ex. A, Defs.' motion, deals very specifically with "any concerns its clients may have *concerning the billings* provided to them. . . ." *Id.* (emphasis added). This very specific provision, which covers SRZ's attempt to recover its attorney fees from Harold Sneddon, who it alleges is Hasco's alter ego, could not have been overlooked. Rather, the facts point to a conscious, perhaps strategic, decision on SRZ's part to pull Harold Sneddon into a civil court rather than seek alternative dispute resolution (ADR).

As for prejudice, there can be little doubt SRZ's actions "prejudicially burdened" Harold Sneddon and thus, according to Defendants' alter ego argument, Hasco. In short, the two (1) have been forced to defend vigorously a civil action in a foreign forum; and (2) appear to have prepared for trial several times. After putting its adversaries through the expensive ordeal of protracted civil litigation in another state, SRZ and its agents cannot now move the dispute back to ADR when faced with the same prospect. The time for invoking compulsory arbitration under the agreement has passed.[6]

Accordingly, the Court **DENIES** Defendants' motion to stay, or in the alternative, to dismiss. The Court further **DENIES** without prejudice Plaintiffs' motion to prohibit and enjoin Defendants from proceeding with their arbitration petition in the Northern District of Illinois, pending that court's determination of whether it will accord comity

---

Sneddon against SRZ, Roche and Brehm arises out of, and is based on, Sneddon's agency relationship with Hasco (and indeed, his role as the controlling person of Hasco). *An arbitration agreement is binding not only on the parties to the contract. but also upon their agents* where the claims made by or against them arise from actions taking [sic] on behalf of a party to the agreement. Defs.' resp. at 15 (emphasis added). If Roche and Brehm, as agents of SRZ, are entitled to benefits under their principal's agreement, they must also be bound by their principal's abandonment of that agreement.

Defendants also now are precluded from arguing the Chicago civil action is not covered under the retention letter and thus the arbitration clause. In their motion to stay, they assert "[T]he claims asserted in Hasco and Harold

Sneddon's Complaint in the United States District Court for the Southern District of West Virginia are squarely within the scope of the mandatory arbitration provision of the retention agreement." Defs.' motion at 8. In that complaint, Plaintiffs' claims include an allegation the Chicago civil action was a prohibited conflict of interest. Compl. at ¶¶ 41, 42. By Defendants' own admission then, arbitration could have been sought by them rather than pursuing Plaintiffs in the Chicago civil courts.

6. This resolution does not lead to the prospect of inconsistent adjudications between this Court and the district court in Illinois. The Court trusts the Illinois district court would extend comity, or apply an appropriate rule of preclusion, to the resolution reached here and not reopen the issue of arbitrability.

to the instant decision on the question of arbitrability.[7]

---

**7.** Both parties have ignored the local rules, either by submitting documents in excess of the page limitation or filing unsanctioned briefs without leave of court. The Court admonishes counsel to adhere to the Local Rules in all further submissions. Documents not in compliance will be stricken.